916 A.2d 1222 (2007)
Catherine Bradley ARTER, Edward R. Becker, Flora L. Becker, Gloria Boyd, Harold Byer, Susan Byer, Joseph L. Capella, Patricia Doohan, Joyce Halley, Jim Howarth, Jacqueline Khoshnevissan, Joseph Menkevich and Leonard Williams, Appellants
v.
PHILADELPHIA ZONING BOARD OF ADJUSTMENT, Anna Batten, Ronald Hancock, Carol Hancock, Nicholas Bernardo, Richard T. Mariano, City of Philadelphia, Delcasale Casey Martin & Manchello, Francis J. Hanssens, Jr., Greenwood Cemetery, Willow Ridge Ltd. and Northwood Civic Association.
Commonwealth Court of Pennsylvania.
Argued November 15, 2006.
Decided February 8, 2007.
*1224 Michael Sklaroff and Matthew N. McClure, Philadelphia, for appellants.
Peter F. Kelsen and Mary A. Mullaney, Philadelphia, for appellees, Ronald Hancock, Carol Hancock, Greenwood Cemetery, and Willow Ridge Ltd.
BEFORE: SMITH-RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.
OPINION BY Judge COHN JUBELIRER.
Catherine Bradley Arter, Edward R. Becker, Flora L. Becker, Harold Byer, Susan Byer, Joseph L. Capella, Patricia Doohan, Joyce Halley, Jim Howarth, Jacqueline Khoshnevissan, Joseph Menkevich, and Leonard Williams (collectively Appellants), residents of the Northwood section of Philadelphia, have appealed a decision of the Court of Common Pleas of Philadelphia County (trial court), affirming the decision of the Zoning Board of Adjustment of the City of Philadelphia (ZBA), which granted variances sought by Greenwood Cemetery Company (Greenwood).[1] Pursuant to those variances, Greenwood, the current owner, and Willow Ridge Ltd. and Ronald and Carol Hancock, the prospective purchasers (collectively Applicants), wish to develop, in an historic cemetery located in an R-4 residential zoning district, a funeral home and a human crematory. Appellants argue, in particular, that the proposed crematory will alter the character of their neighborhood from residential to industrial/commercial.

I.
Greenwood Cemetery comprises 43 acres in the Northwood section of Philadelphia, and has been a burial ground since the 1830s.[2] The property is currently listed on the Philadelphia Register of Historic Places (Letter from Chairman of Philadelphia Historical Commission, Oct. 10, 2000, Reproduced Record (R.R.) 410a), and the cemetery contains graves of veterans of the Revolutionary War, the War of 1812, and the Civil War. (Nomination for Greenwood Cemetery, entered Aug. 9, 2000, R.R. 404aa.) Applicants contend it is a pre-existing, non-conforming use in an R-4 residential zoning district.[3] The cemetery is surrounded by neighborhoods with "[a]t least six different zoning classifications," including C-2 and C-3 commercial, recreational, and an area shopping center.[4] *1225 (Applicants' Br. at 13.) On the grounds are five detached structures and an area for parking. (ZBA Decision Finding of Fact (FOF) ¶ 1.) Some of these structures are the result of three variances previously granted for the property by the ZBA: (1) in 1965, for a private gas station accessory to the cemetery; (2) in 1985, for erection of a two-family dwelling and an accessory, detached garage; and (3) in 1995, for erection of two non-accessory signs (creating the condition of multiple structures on one lot). (FOF ¶ 6.)
The cemetery is presently in a deteriorated condition; the grounds are overgrown and impassable, monuments and grave markers are toppled and damaged, and the buildings are dilapidated and structurally impaired. (FOF ¶ 7.) Greenwood has been cited by the Philadelphia Department of Licenses and Inspections (L & I) for overgrowth of vegetation on the property. (FOF ¶ 7.) Residents of the area have opined that the property, in its current physical state and being subject to ongoing trash dumping and fire setting, is a blight on the community. (FOF ¶ 30.)
Applicants filed a zoning and use registration application with L & I to obtain approval to develop a funeral home and crematory on the grounds of the existing cemetery.[5] They contend that providing on-site cremation is the trend in the funeral business, and a crematory is a customarily incidental use to a cemetery. (FOF ¶¶ 25, 26.) They wish to restore the cemetery[6] and most of the existing structures, but contend this can be done only if the cemetery is made economically viable by incorporating the proposed crematory into its operations. (FOF ¶ 8.) L & I issued Notices of Refusal of Permit (two use and three zoning refusals), finding the proposals for the subject property would not comply with area and use regulations for an R-4 zoning district, in violation of Section 14-205 of the Philadelphia Zoning Code (Code), and furthered "a condition of multiple structures and multiple uses on one lot . . .," in violation of Code Section 14-113 (prohibition of multiple structures and multiple uses). (FOF ¶ 2; Notice of Refusal of Permit, May 5, 2000, R.R. 4a.)
Applicants then filed a Petition of Appeal to the ZBA, arguing: (a) the proposed *1226 funeral home and human crematory were permitted accessory uses to an existing cemetery; (b) the new construction would replace deteriorated structures and was lawful under regulations governing non-conforming uses and structures, and (c) in the alternative, they were entitled to variance relief. The ZBA, after public hearings on May 31, 2000[7] and June 28, 2000, granted Applicants' alternative request for relief. Applicants were issued a use variance with conditions, including a requirement that they satisfy all items listed in their agreement with the Northwood Civic Association,[8] and eight requirements listed in a proviso letter from Councilman Richard Mariano (FOF ¶¶ 4, 17, 28).
Based on its conclusion that the proposed crematory was expected to be the main source of revenue for the property, the ZBA determined that the funeral home and crematory were not permitted as a matter of right as accessory uses. (ZBA Decision Conclusion of Law (COL) ¶ 5.) However, the ZBA concluded that Applicants had satisfied the criteria for obtaining a variance under Code Section 14-1802(1) by establishing, among other things, unnecessary hardship. (COL ¶¶ 9-12.) The ZBA concluded that use of the property for residential purposes would not be feasible because the property was an existing cemetery, and use of the property as a cemetery only would be financially impractical; therefore, denial of Applicants' request to extend the current use of the property to include uses compatible with the property's existing cemetery would constitute unnecessary hardship. (COL ¶ 9.) The ZBA also determined that Applicants' hardship was not self-imposed, the variances were the minimum necessary to afford relief, and Applicants' proposal would not adversely impact the public health, safety or welfare. (COL ¶¶ 9-12.)
Appellants appealed the ZBA's decision to the trial court, which affirmed. The trial court, without taking additional evidence, determined that the ZBA made comprehensive findings supported by substantial evidence of record, and did not abuse its discretion. The trial court also determined that the ZBA did not commit an error of law because its findings were material to its legal conclusions (see, e.g., COL ¶¶ 6-12), and formed sufficient bases for its decision to grant the variances for restoration of the cemetery. Appellants now appeal the trial court's decision to this Court.[9]

*1227 II.
On appeal, Appellants argue: (1) the ZBA erred in finding unnecessary hardship sufficient to support a use variance; (2) the ZBA's finding that a proposed human crematory would not be adverse to the public health, safety or welfare is not supported by substantial evidence; and (3) the ZBA correctly concluded that a human crematory and funeral home are primary uses and not permitted as uses accessory to an existing cemetery.
Applicants present an alternative "counter-argument."[10] Citing to Rabenold v. Zoning Hearing Board of Palmerton, 777 A.2d 1257, 1263 n. 7 (Pa.Cmwlth.2001), Applicants propose that, "[a]lthough the ZBA analyzed this matter as a variance case, and based its ruling upon that reasoning, this Court can sustain the decision to issue the permit on alternative grounds." (Applicants' Br. at 25 n. 61.) Accordingly, Applicants contend that, as a non-conforming use, the cemetery is entitled to expand its operations pursuant to the natural expansion doctrine.

A.
Appellants first argue that the ZBA erred in finding unnecessary hardship sufficient to support a use variance. Applicants counter that the variance was appropriately granted. To establish unnecessary hardship an applicant must show that, due to its physical characteristics, the property cannot be used for any permitted purpose, can conform only to such purpose at a prohibitive expense, or, that the property has either no value or only distress value for any permitted purpose. Rittenhouse Row v. Aspite, No. 817 C.D. 2005, 915 A.2d 163, (Pa.Cmwlth.2006); (COL ¶ 8.) The ZBA concluded, in relevant part, that:
9. . . . to require Applicant[s] to use the property only as a cemetery would be financially impractical. As demonstrated by the property's current physical state, the cemetery does not generate the revenue necessary to maintain all forty-three (43) acres. Therefore, if the [ZBA] were to restrict the use of the subject property to a permitted purpose, the property would have little or no value for Applicant[s].
10. The hardship presented is not self-imposed by Applicant[s].
11. The variance with the imposed provisos is the minimum necessary to afford relief to Applicant[s].
(COL ¶¶ 9-11.)
After review of the record, we must agree with Appellants that Applicants failed to present to the ZBA sufficient evidence of unique physical conditions or prohibitive expense to establish unnecessary hardship and prevent their reasonable use of the property. There is nothing in the record to preclude Applicants' continued use of the property as a cemetery. Furthermore, Applicants provided no proof, whatsoever, other than the purchaser's self-serving remarks of the cemetery's financial distress, and no evidence that the cemetery does not produce sufficient funds to cover its maintenance costs. Thus, Applicants failed to prove that continued use of the property as a cemetery would be "financially impractical." Furthermore, Applicants failure to provide the ZBA with sufficient evidence of the "dire" financial *1228 condition of the cemetery also prevents the ZBA's grant of a variance as a matter of strict business necessity to ensure its long-term survival. See Bellosi v. Zoning Hearing Board of Clifton Heights Borough, 96 Pa.Cmwlth. 83, 506 A.2d 997 (1986). Moreover, Applicants failed to provide any evidence of the actual value of the property, or an accounting of the statutorily-mandated perpetual care trust.[11]
In addition, a variance should not be granted if the current condition of the cemetery is due to the owner's neglect, which would then be considered a self-inflicted hardship. Greenwood has owned the property since 1869, and its counsel basically admitted that the deteriorated condition of the property is due to decades of neglect. (ZBA Hr'g Trans., June 28, 2000, at 8-9; R.R. 20a-21a.) The owner of the property cannot create a hardship and then request a variance to remedy same. Appeal of Grace Building Co., Inc., 38 Pa.Cmwlth. 178, 392 A.2d 888 (1978).

B.
Appellants next argue that the ZBA's finding that a proposed human crematory would not be adverse to the public health, safety or welfare is not supported by substantial evidence. Appellants argue that the ZBA lacked substantial evidence when it found that placing a human crematory in a residential community is in accord with public interest. Northwood is a residential community, essentially unchanged in character or appearance for decades. (Arters' Br. at 9.) Appellants argue that a funeral home and crematory will change the character of the neighborhood because a funeral home is a commercial use and a crematory is an industrial use. Applicants argue that the proposed use will not negatively impact the public health, safety or welfare because it will comply with all applicable government codes and regulations (FOF ¶ 18), be constantly monitored by the city's health department, and will allow for the elimination of property that has become a public nuisance (COL ¶ 12).
Section 14-1802(1)(c) of the Code requires the ZBA to consider whether the variance will "substantially or permanently injure the appropriate use of adjacent conforming property." While Applicants have seemingly taken precautions to ensure the public's health, safety and welfare are protected, they have not provided any evidence to show that operation of a funeral home and crematory will not change the essential character and nature of this historic residential neighborhood, or injure the appropriate use of neighboring, conforming property.

C.
Finally, Appellants argue that the ZBA correctly concluded that a human crematory and funeral home are primary uses and not permitted as uses accessory to an existing cemetery. Applicants counter that their proposed improvements constitute reasonable accessory uses customarily incidental and subordinate to the property's principal use as a cemetery.
Section 14-102(2) of the Code defines an "accessory use" as "[a] use . . . subordinate to and on the same lot as the main use on a lot and customarily incidental to the main use. . . ." Thus, in order to support their counter-argument, Applicants must prove: (1) that the proposed funeral home and crematory are secondary to the use of the property as a cemetery; and (2) that a funeral home and crematory are *1229 customarily incidental to properties used as cemeteries. The determination as to whether the proposed funeral home and crematory are accessory uses is a question of law and subject to our plenary review. Southco, Inc. v. Concord Township, 552 Pa. 66, 713 A.2d 607 (1998).
Our Supreme Court has determined that, when evaluating whether one use is accessory to another, the "secondary" or "subordinate" prong of the test depends upon whether the use is "dependent upon" a property's principal use. Southco, Inc., 552 Pa. at 74, 713 A.2d at 611. Applicants provide no authority or discussion which supports an argument that either a funeral home or crematory is dependent upon a property's principal use as a cemetery, nor do Applicants provide evidence that a funeral home and crematory are customarily incidental to a cemetery. In fact, Pennsylvania case law provides that "the operation of a crematory is an ancillary service of a funeral home, which is a retail service establishment. Both funeral homes and crematories deal with the final disposition of human remains through either internment or cremation. Cremation is a use that is incidental or subordinate to the operation of a funeral home. . . ." Rabenold, 777 A.2d at 1263 (emphasis added).
Furthermore, pursuant to Section 14-1602 of the Code, a new cemetery use is allowed by ordinance only,[12] whereas a funeral home is permitted by right as a principal use in commercial districts. (See Sections 14-302(1)(b)(6), 14-303(2)(g), 14-306.1(1)(e), and 14-306.2(2)(j) of the Code.) Thus, a funeral home is the "fundamental" use in this appeal. (Appellants' Reply Br. at 8.) A funeral home is not allowed, however, in an R-4 residential district as either a principal or accessory use. (Section 14-105 of the Code; COL ¶¶ 3, 4.)
We note that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great deference and weight. Risker v. Smith Township Zoning Hearing Board, 886 A.2d 727, 731 (Pa.Cmwlth.2005). Thus, the ZBA correctly determined that Applicants' proposed funeral home and crematory would be primary uses of the property and, thus, not accessory uses permitted as of right. (COL ¶ 5.)

III.
We now address Applicants' counter-argument that, as a non-conforming use, the cemetery is entitled to expand its operations pursuant to the natural expansion doctrine. Although the Pennsylvania Supreme Court has indicated that, to be approved, expansion of a non-conforming use must "meet the ordinary requirements for the grant of a variance,"[13] *1230 Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township, 67 Pa.Cmwlth. 183, 446 A.2d 716, 720 (1982) (quoting Walter v. Zoning Board of Adjustment (Philadelphia), 437 Pa. 277, 282, 263 A.2d 123, 126 (1970)), some of those requirements are more easily satisfied when the existing use is non-conforming.[14] Therefore, we must determine whether Applicants' proposal actually constitutes an expansion of a current non-conforming use, as they contend it does in their counter-argument, or whether it is a new and different use.
The natural expansion doctrine provides that "a nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted." Nettleton v. Zoning Board of Adjustment of the City of Pittsburgh, 574 Pa. 45, 51 n. 3, 828 A.2d 1033, 1037 n. 3 (2003) (quoting Humphreys v. Stuart Realty, 364 Pa. 616, 621, 73 A.2d 407, 409 (1950)). The rationale of the doctrine has its origins in the due process requirements protecting private property; if a person owns property which constitutes an existing, legal, non-conforming use, it is "inequitable to prevent him from expanding the property as the dictates of business or modernization require." Silver v. Zoning Board of Adjustment, 435 Pa. 99, 102, 255 A.2d 506, 507 (1969). A municipality cannot, per se, prohibit the natural expansion of a non-conforming use. Id. at 103, 255 A.2d at 508.
To determine whether a use qualifies as a continuation or expansion of a non-conforming use, our Supreme Court has held that the proposed use need not be identical to the current use. Domeisen v. Zoning Hearing Board of O'Hara Township, 814 A.2d 851, 856 (Pa.Cmwlth.2003). Rather, the proposed use must be sufficiently similar to the non-conforming use as to not constitute a new or a different use. Id. Our Supreme Court has also held that a change in instrumentality will not defeat the purpose or existence of a non-conforming use. Township of Chartiers v. William H. Martin, Inc., 518 Pa. 181, 187, 542 A.2d 985, 988 (1988). The Court, in Chartiers, warned that an "overly technical assessment" of an established non-conforming use cannot be utilized to "stunt" its natural development and growth. Id. at 187-88, 542 A.2d at 988. Thus, the owner of a non-conforming use may utilize modern technology into the business without fear of losing that business. Id. at 189, 542 A.2d at 989.
However, the right to expand a non-conforming use is not unlimited, and a municipality has every right to impose reasonable restrictions. Silver, 435 Pa. at 102, 255 A.2d at 507. For instance, the right to expand does not include the right to add a second non-conforming use. Daley *1231 v. Zoning Hearing Board of Haverford Township, 75 Pa.Cmwlth. 101, 461 A.2d 347 (1983). While Applicants claim their proposal merely expands the existing use on the property, they fail to provide evidence sufficient to support their argument that a funeral home and/or a crematory constitutes the natural expansion or modernization of a cemetery in the Commonwealth of Pennsylvania. Because we have already determined that both a funeral home and a crematory are neither secondary, nor subordinate, to the cemetery use on this property, but, instead, constitute new, different, and primary non-conforming uses in their own right, we hold Greenwood Cemetery is not entitled to expand its operations to include those uses pursuant to the natural expansion doctrine.[15]

IV.
Accordingly, based on the foregoing analysis, we reverse the order of the trial court affirming the ZBA's grant of variances.

ORDER
NOW, February 8, 2007, the order of the Court of Common Pleas of Philadelphia County is hereby REVERSED as to its affirmance of the Philadelphia Zoning Board of Adjustment's grant of variances regarding Greenwood Cemetery, et al.
NOTES
[1] If there is reason herein to refer to a specific member or members of the group of Appellants, they will be identified by name.
[2] The property was first used as a private cemetery. (Report of the Committee of Historic Designation, Philadelphia Historical Commission, Reproduced Record (R.R.) 413aa.) The larger Greenwood Cemetery was founded in 1869, and has been continuously used as a cemetery since that time. (ZBA Decision Finding of Fact (FOF) ¶ 7.)
[3] The cemetery's existence pre-dates Philadelphia's zoning code, enacted in 1933. Pursuant to Section 14-104(1) of the City of Philadelphia Zoning Code (Code):

Any structure, or the use of any land or structure or portion of a structure, which was a non-conforming structure or use under the terms of the zoning ordinance of August 10, 1933, as amended, shall continue to be a non-conforming structure or use, which may continue at the same location, but shall be subject to the provisions, limitations and restrictions of this Section governing non-conforming structures and uses.
[4] The cemetery grounds are bounded by Adams, Castor, Wyoming and Ramona Avenues. To the north of the property is the Oakland Cemetery. (FOF ¶¶ 20, 22.) Abutting the property to the south is Parkview Hospital. (FOF ¶ 22.) Directly across the street from the property are the Tacony Creek Park and the Juniata Golf Course, which create a buffer between the property and the residential neighborhood situated to the south and west. (FOF ¶ 22.) Southeast of the property is an area shopping center. (FOF ¶ 24.)
[5] Applicants were specifically seeking approval for three zoning and two use variances to accomplish the following:

[T]he complete demolition of two (2) buildings, the erection of three (3) accessory, off-street, private parking lots ("Lot A", "Lot B" and "Lot C"), Lot A to have 60 parking slots, Lot B to have five (5) handicapped-accessible parking slots, and Lot C to have six (6) parking slots, the erection of one (1), two-story, detached structure ("Building 1") to be used as a cemetery, funeral home and crematory offices, conference and arrangement rooms and merchandise selection rooms, and the erection of one (1), two-story, detached structure ("Building 2") to be used as a cremation room, funeral and cremation gathering area, funeral home preparation and refrigeration rooms, to exist on the same lot as a cemetery receiving vault ("Building 3"), a two (2) family dwelling ("Building 4") (superintendent/grounds keeper), a cemetery garage and storage building ("Building 5"), an existing cemetery, and two (2), freestanding, non-accessory, outdoor advertising signs. (Application for Zoning and/or Use Registration Permit No. XXXXXXXXX).
(FOF ¶ 1; see also FOF ¶¶ 11, 12, 14, 15.) Applicants plan to operate the proposed crematory Monday through Friday, from 7:30 a.m. until 6:00 p.m., and on Saturday, from 7:30 a.m. until 12:00 p.m. (FOF ¶ 16.)
[6] Applicants propose to spend $500,000 to restore the cemetery by clearing overgrowth of vegetation, re-erecting and repairing grave markers and monuments, re-establishing cemetery pathways, repairing the cemetery's stone wall, demolishing deteriorated structures, and buffering three accessory parking lots with landscaping. (FOF ¶¶ 13, 14.)
[7] This hearing was continued at Applicants' request to facilitate discussions with Northwood Civic Association. (ZBA Hr'g Trans., May 31, 2000, R.R. 8a.) The ZBA actually heard the case on June 28, 2000. (ZBA Hr'g Trans., June 28, 2000, R.R. 13-84a.)
[8] Included in the agreement, dated June 28, 2000, were requirements to: (1) establish an advisory committee to oversee renovation and restoration of the cemetery and a $500,000 fund set up to pay for this work; (2) preservation of the federal style in new structures; (3) landscaping and buffering of parking areas; (4) restriction of hours of operation for crematory; (5) visual screening from public rights-of-way of delivery and unloading of human remains. (Letter Agreement, June 28, 2000, R.R. 87a-91a.) Applicants agreed to incorporate into their proposals the restrictions and conditions enumerated in this agreement. (FOF ¶ 17.)
[9] In a zoning matter, where the trial court has not taken additional evidence, this Court's review is limited to determining whether the zoning board abused its discretion or committed an error of law. Valley View Civic Ass'n v. Zoning Board of Adjustment, 501 Pa. 550, 462 A.2d 637 (1983). A zoning board abuses its discretion if its findings are not supported by substantial evidence. Id. Substantial evidence is such relevant evidence as a reasonable mind might consider as adequate to support a conclusion. Id.
[10] Applicants actually present three so-called "counter-arguments"; two of them, however, simply respond to Appellants' arguments and, therefore, will be addressed accordingly. Those two counter-arguments are: (1) in the alternative, proposed improvements constitute reasonable accessory uses customarily incidental and subordinate to the property's principal use as a cemetery; and (2) the variance was appropriately granted. (Applicants' Br. at 23.)
[11] Every cemetery must set aside, annually, and deposit into a permanent lot care fund, at least 15% of the gross amount of the purchase price of cemetery lots, and/or the construction costs of crypts sold in a mausoleum or niches sold in a columbarium, if applicable. 9 Pa. C.S. § 303.
[12] Section 14-1602 of the Code permits cemeteries established prior to May 25, 1866, or subsequently permitted by ordinance, to exist where otherwise prohibited. The property on which Greenwood Cemetery now sits has been continuously used as a burial ground since the 1830s. (Report of the Committee on Historic Designation, Philadelphia Historical Commission, R.R. 413aa.)
[13] To establish entitlement to a variance, an applicant must show:

(1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.
Taliaferro v. Darby Township Zoning Hearing Board, 873 A.2d 807, 811-12 (Pa.Cmwlth. 2005) (quoting Ruddy v. Lower Southampton Township Zoning Hearing Board, 669 A.2d 1051, 1053 (Pa.Cmwlth.1995)); (see also Section 14-1802 of the Code). "The reasons for granting a variance must be substantial, serious and compelling." Valley View Civic Association v. Zoning Board of Adjustment, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).
[14] For example, regarding the first requirement, that there be unique physical circumstances or conditions that cause unnecessary hardship, "the pre-existing nonconforming use itself constitutes the physical `circumstances' which, apart from other lot or land characteristics, make the property uniquely different from others in the district." Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township, 67 Pa.Cmwlth. 183, 446 A.2d 716, 720 (1982). Furthermore, a "lawful nonconforming use, established before any prohibition can be known, does not invoke" the fifth requirement, that the hardship not be self-created. Id. at 722.
[15] Appellants contend that Greenwood has lost it non-conforming use status, pursuant to Section 14-104(4)(b) of the Code, because variances have previously been granted for the property in 1965, 1985 and 1995. (FOF ¶ 6; see also supra p. 1225.) Section 14-104(4)(b) provides that "[a] non-conforming structure or use shall cease to be considered as such whenever it becomes the subject of a variance, granted by the Zoning Board of Adjustment or ordered by a Court, and its non-conforming status shall not be reinstated thereafter." Section 14-104(4)(b) of the Code (emphasis added).

The burden of proving the existence of a non-conforming use rests with the landowner asserting a non-conforming use. Collier Stone Company v. Zoning Hearing Board for the Township of Collier, 710 A.2d 123, 125 (Pa.Cmwlth.1998). The ZBA noted the existence of prior variances on the Greenwood Cemetery property (FOF ¶ 6, COL ¶ 1), and did not mention or discuss the cemetery's non-conforming use status. Likewise, the trial court noted the prior grant of variances on the property (Trial Ct. Op. at 3-4), and did not mention anything about the existence of a non-conforming use. However, the ZBA, as the finder-of-fact, did not make the necessary finding that the property no longer retains its non-conforming use status.
If a zoning hearing board or trial court fails to make findings necessary for this Court to undertake appellate review, in most instances, we would enter a remand order; however, that is unnecessary in this case. Regardless of whether the property loses or retains its non-conforming status, our determination of the outcome remains the same: if the property no longer supports a non-conforming use, we apply the more stringent use variance standard. Likewise, even if the property retains its status as a non-conforming use, because we find Applicants' proposal not to be an expansion of that use, it is not entitled to the variance under that theory.