# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Graybrook and Donna Kell,    :
              Appellants    :
                                :
              v.               :   No. 250 C.D. 2017
                                :   Argued: November 14, 2017
City of Pittsburgh Zoning Board of    :
Adjustment and City of Pittsburgh    :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE J. WESLEY OLER, JR., Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                   **FILED: December 21, 2017**

Michael Graybrook and Donna Kell (collectively, Appellants) appeal from an order of the Court of Common Pleas of Allegheny County (common pleas), dated January 30, 2017, which affirmed an order of the City of Pittsburgh (City) Zoning Board of Adjustment (ZBA), granting an application for dimensional variances, and dismissed Appellants' appeal. We now reverse.

On January 8, 2016, Faizan Arif Minhas (Applicant) filed with the ZBA an application for dimensional variances regarding a property with an address of 5100 Bayard Street, Pittsburgh, Pennsylvania (the Property). The Property is a corner lot located in an R1D-L (Single-Unit Detached Residential, Low Density) District in the Shadyside area of Pittsburgh. On the Property is a two-and-one-half story one-family dwelling (house), which faces Bayard Street. Applicant wishes to engage in renovations, which, in part, would include enclosing the existing porches,

building a two-story addition to the part of the house that fronts onto Amberson Avenue (the other street that borders the Property), and reorienting the house by locating the front door so that it faces the Amberson Avenue property line. In order to do so, Applicant filed an application requesting variances from Section 903.03B.2 of the City of Pittsburgh's Zoning Code (Zoning Code) for the proposed new front, rear, and exterior side yard setbacks.

With regard to the specifics of the Property, it is undisputed that the house, as it is currently oriented towards Bayard Street, is 48' wide (along Bayard Street) with a depth of 85' (along Amberson Avenue). A covered porch and front door face Bayard Street. In the front, the house is 18' 11" from the Bayard Street property line, and the covered porch is approximately 10' from the Bayard Street property line. The porch extends around the corner of the house on the Amberson Avenue side. The exterior side of the house adjacent to Amberson Avenue is approximately 19' from the Amberson Avenue property line, and the extension of the porch is 13' 11" from the Amberson Avenue property line. The other side of the house is approximately 3' from the current interior side property line, which separates the Property from the adjacent property on Bayard Street. The house is situated 27' from the rear property line.

Applicant's proposed renovations would reorient the house such that the setback for the new front of the Property (formerly the side that was adjacent to Amberson Avenue) would be 13' 11", the setback for the new rear of the Property (formerly the side yard adjacent to the neighboring property on Bayard Street) would be 3', the setback for the new exterior side yard of the Property (which is closest to Bayard Avenue) would be approximately 10', and the setback for the new interior side yard of the Property would be 27'.

2

The ZBA conducted a public hearing on February 4, 2016, during which Applicant and Carl Broussard, who is employed with B Squared Construction, appeared in support of the application. Appellants, who reside next to the Property at 5104 Bayard Street, and another neighbor who lives on Bayard Street, Barbara Ernsberger (Ernsberger), appeared before the ZBA to oppose the application.

With regard to unique circumstances of the Property, Applicant testified that he believes that the Property is unique because it is on a corner and is narrow and shallow, regardless of how you view the Property. (Reproduced Record (R.R.) at 19a.) He also believes that it is unique because he requested an address change, and he does not believe that there is much else he could do to create an addition. (*Id.* at 19a-20a.)

Mr. Graybrook testified that the houses on Bayard Street were built in the mid-1920s by a developer and builder named Hulley and that they have some architectural significance. (R.R. at 13a.) Approximately 10 to 15 years ago, a local television station did a special on houses of Pittsburgh, and the special featured Appellants' block. (*Id.*) Mr. Graybrook further testified:

> Every one of these homes has a front porch. We think it is important to the neighborhood. A lot of us use the front porches in warm weather. We communicate on our front porches. My wife and I eat on our front porch. People walk by. It provided a real strong sense of neighborhood.

(*Id.*) Mr. Graybrook and Ms. Kell testified that they specifically oppose the enclosure of the front porch that faces Bayard Street. (*Id.* at 15a.)

Ms. Ernsberger testified that she concurs that the neighbors all use their porches. (*Id.* at 17a.) Her children, now grown, "lived on the porch in the summertime" when they were young. (*Id.*) "It is still that way for many families on the street." (*Id.* at 17a-18a.) She believes enclosing the porch facing Bayard Street

3

will block the view. (*Id.* at 18a.) As to hardship, she expressed an opinion that Applicant should "have no problem selling" the Property, and she could provide names of some individuals who are potentially interested in buying the Property "as is." (*Id.*)

Appellants also introduced a petition to oppose the dimensional variances, purportedly signed by fifteen property owners, including Appellants, who live on Appellants' block on Bayard Street. (*Id.* at 16a, 24a-25a.) The petition averred, in part, that the application violates existing setbacks and that the houses on the block are "architecturally significant" in that their porches promote safety and strengthen the community.

By decision dated March 10, 2016, the ZBA granted the dimensional variances. In granting the dimensional variances, the ZBA concluded:

> 5. Here, the Applicant seeks dimensional variances to allow for the porch enclosure and the two-story addition. The proposed height would conform with the height limitation. With the reorientation of the house onto Amberson Avenue, the setback requirements would also change but are constrained by the existing structure. Enclosure of the porch would, in effect, extend the structure of the Bayard Street side but would not extend beyond the footprint of the porch. In effect, the Applicant[] seek[s] approval for the extension of a nonconforming structure and dimensional variances to allow the reorientation of the front of the house, consistent with the location of the existing structure.
>
> 6. *Given the unique conditions and configurations of the . . . Property on the corner lot and the existing structure*, the requested dimensional variances are minimal and would not result in any significant impact on the abutting properties.
>
> 7. The Board recognizes the concerns the neighboring property owners raised regarding aesthetics and neighborhood character. However, the orientation of the

4

house and use of the porch on . . . Applicant's [P]roperty are not substantial or detrimental impacts in this context.

(ZBA decision at 2, attached to Appellants' Br. (emphasis added).) Appellants appealed to common pleas, which took no additional evidence and affirmed the ZBA's decision.

On appeal to this Court,[1] Appellants argue that the ZBA erred as a matter of law in concluding that Applicant demonstrated that he met the criteria for a dimensional variance under the Zoning Code where (1) there were no unique physical characteristics of the Property constituting an unnecessary hardship; (2) the relief requested would alter the essential character of the neighborhood; and (3) the relief requested would substantially or permanently impair the appropriate use of or development of adjacent property. Applicant counters that the ZBA and common pleas did not err or abuse their discretion in granting the requested variances, because the remodeling work will not extend the existing footprint of the house.[2]

Section 903.03.B.2 of the Zoning Code, which sets forth the setback requirements for primary structures in low-density residential districts,

---

[1] "Where a trial court takes no additional evidence in an appeal from a decision of the Board, this Court is limited to considering whether the Board erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012). The Board "abuses its discretion if its findings are not supported by substantial evidence." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 75 (Pa. 2007).

[2] Applicant describes Appellants' challenge before the ZBA as limited to an objection to the enclosure of the porch on the Bayard Street side of the Property and now argues that Appellants have waived any issues on appeal except the variance of the setback from Bayard Street, which variance Applicant contends is minimal. Although Appellants focus on how the enclosure of the current front porch would impact the use and enjoyment of their own property, Appellants broadly challenge that the Applicant failed to meet the requirements for any variance. Thus, we reject Applicant's waiver argument.

establishes 30' as the minimum front, rear, and exterior side yard setbacks for the Property and 5' as the minimum interior side yard setback.[3]   Pursuant to Section 922.09(E) of the Zoning Code, the ZBA may grant a variance for those setback requirements where it finds that all of the following conditions exist:

> 1. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the *unnecessary hardship* is due to the conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;
>
> 2. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;
>
> 3. That such unnecessary hardship has not been created by the appellant;
>
> 4. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and
>
> 5. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

---

[3] Pursuant to Section 925.06.D of the Zoning Code, the Zoning Administrator shall determine which frontages shall be considered the front, sides, and rear.  "Criteria to be considered shall include but not be limited to orientation of the primary structure, orientation of the neighboring structures, and the location of entrances to the structure."  Section 256.06.D of the Zoning Code.

(Emphasis added.) In addition, the applicant has the burden to prove that the proposal satisfies the applicable review criteria. Section 922.09E of the Zoning Code.

With regard to the first requirement for a variance—*i.e.*, unique physical circumstances and conditions of the property constituting an unnecessary hardship, our Court has explained this requirement in the context of a dimensional variance:

> A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations. *Hertzberg*[ *v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43 (Pa. 1998)]. The same criteria apply to use and dimensional variances. *Id.* However, in *Hertzberg*, our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance.

> Under *Hertzberg*, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Id.* at 50 (emphasis added).

> Although *Hertzberg* eased the requirements, it did not remove them. *Tri-County* [*Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth.), *appeal denied*, 101 A.3d 788 (Pa. 2014)]. An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship. *Id.* Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a

7

variance is not satisfied even under the relaxed standard set forth in *Hertzberg*. *Id.*

> Nevertheless, as this Court explains: "*Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship." *Society Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment*, 42 A.3d 1178, 1188 (Pa. Cmwlth. 2012) (quoting *Yeager v. Zoning Hearing Bd. of City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001)) (emphasis added). Further, in *Marshall*[ *v. City of Philadelphia and Zoning Board of Adjustment*, 97 A.3d 323 (Pa. 2014)], the Supreme Court stated: "This Court has repeatedly made clear that in establishing hardship, an applicant for a variance is not required to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." [*Marshall,* 97 A.3d] at 330 (emphasis in original).

*Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 8-9 (Pa. Cmwlth. 2015) (non-citation alterations in original).

Appellants contend that there are simply no unique physical circumstances or conditions peculiar to the Property that result in an unnecessary hardship to Applicant. With regard to unique physical circumstances or conditions of the Property, the ZBA appears to rely upon the Property being a corner lot. With regard to hardship, the only possible hardship that Applicant and the ZBA identified relates to Applicant being unable to increase the square footage of Applicant's house and enhance the value of the Property by reorienting the front of the Property, enclosing the porch, and constructing an addition.

Applicant has not established a unique physical condition of the Property that prevents him from using and enjoying his property in strict conformity with the current Zoning Code. Indeed, Applicant resides in a single-family house on the Property, albeit a house that does not conform to all current setback

8

requirements in the Zoning Code. He obviously wishes to renovate his house to make it larger in a way that is not permitted under the Zoning Ordinance. Wishes and desires alone, however, do not give rise to a hardship for dimensional variance purposes. Here, Applicant's desire to renovate his Property is restricted not by unique physical characteristics of the Property, but by the Zoning Ordinance itself. Accordingly, we agree with Appellants that the ZBA erred in concluding that Applicant established a hardship, even under the relaxed standard in *Hertzberg*.

Rather than address the hardship requirement directly, common pleas merely stated that the ZBA "determined that the requested variances are minimal and would not result in significant impact on neighboring properties." (Common pleas opin. at 5.) Common pleas then improperly relied on *Nettleton v. Zoning Board of Adjustment of Pittsburgh*, 828 A.2d 1033 (Pa. 2003), and *Yocum v. Kingston*, 141 A.2d 601 (Pa. 1958), for the basis of its decision. Those cases stand for the proposition that a zoning board may grant a variance where the proposed addition would not have the effect of increasing the degree of already existing nonconformity. Here, the proposed renovations, if allowed, would increase the nonconformity.

As part of his proposed renovations, Applicant would enclose the open wrap-around porch on the house, which currently abuts Bayard Street (front yard) and Amberson Avenue (exterior side yard) and reorient the house. Section 925.06.A of the Zoning Code, pertaining to features allowed within setbacks, permits certain structures and features, including porches meeting specific requirements, to be located *within* a required setback—*i.e.*, the feature would not be counted as part of

9

the setback calculation.[4]  Pursuant to Sections 925.06.G and 925.06.G.1, the Zoning Administrator may permit certain additional features to be located within setbacks, including enclosures of "existing . . . porches in *side or rear yards*."  (Emphasis added.)  Accordingly, while the existing open porches abutting Bayard Street and Amberson Avenue are excluded from setback calculations as the house is currently oriented, under either the current or proposed orientation of the house, an enclosed *front* porch becomes part of the house and must be included in the setback calculation.  Doing so necessarily increases the house's nonconformance with existing setback requirements.

> Applicant calculates the post-renovation setbacks as follows:
>
> [T]he subject house is already beyond the setback lines, sitting 18' 11" from Bayard [Street] and 19' from Amberson [Avenue], and [Applicant] merely wants the setbacks to be 10' and 13' 11".  *Thus, the real-world change in the actual, physical setbacks of the house would only be from 18' 11" to 10', and from 19' to 13' 11".*  In other words, even though the prescribed setbacks are each 30', [Applicant] would not actually be moving his setbacks from 30' down to 10', or from 30' down to 13' 11".  Instead, he would only be moving the actual setbacks from 18' 11" (Bayard [Street]) and 19' (Amberson [Avenue]) down to 10' and 13' 11" respectively.

---

[4] Pursuant to Section 925.06.A(14)(1) of the Zoning Code, the following structures may be located within required setbacks:

14.  Open structures such as porches, decks or landing places which do not extend above the first floor of the building, with railing no more than forty-two (42) inches high, and with no roof construction measuring more than four (4) feet from the under side of the supporting plate to the top of the roof, may be erected:

1.  In required front or rear yards, or side yard abutting a street, provided the structure is not more than nine (9) feet in depth and not nearer an abutting interior lot line than [the] required width of the side yard; or the existing side wall setback whichever is the minimum amount;

(Applicant's Br. at 24 (emphasis added).) Thus, Applicant acknowledges that the enclosure of the wrap-around porch and reorientation of the house would increase the current dimensional nonconformity in relationship to what the Zoning Code requires. With regard to the 3' distance between Applicant's house and Appellants' house, Applicant notes that the actual distance would not change whatsoever. What Applicant fails to acknowledge is that, as currently oriented, the area between the two houses is the *interior side yard*, which requires only a 5' setback under the Zoning Code. As currently oriented, the nonconforming setback for the interior side yard is 40% less than the required 5' setback. If Applicant's house were reoriented as Applicant proposes, the area between the two houses would become the Property's *rear yard*, which requires a 30' setback under the Zoning Code. As reoriented, the new rear yard setback of 3' would be 90% less than the required 30' setback, resulting in a substantial increase in nonconformity.[5]

---

[5] Article VII, Chapter 921 of the Zoning Code pertains to nonconformities, including nonconformities involving uses, structures, lots, and "other" types of nonconformities. Section 921.01.A of the Zoning Code, explains the purpose of Chapter 921:

It is the general policy of the City to allow uses, structures and lots that came into existence legally in conformance with then-applicable requirements to continue to exist and be put to productive use, but to bring as many aspects of such situations into compliance with existing regulations as is reasonably possible. This chapter establishes regulations governing uses, structures and lots that were lawfully established but that do not conform to one (1) or more existing requirements of this Code. The regulations of this chapter are intended to:

1. Recognize the interests of property owners in continuing to use their property;

2. Promote reuse and rehabilitation of existing buildings;

3. Place reasonable limits on the expansion of nonconformities that have the potential to adversely affect surrounding properties and the community as a whole; and

11

Thus, although the proposed renovations would not change the current footprint of the Property, the renovations would impact how the setbacks are measured, resulting in a substantial increase in dimensional nonconformity (with the exception of the new interior side yard). In light of this increase in nonconformity, coupled with the lack of any hardship owing to unique physical conditions of the Property, we conclude that common pleas erred in affirming the ZBA's decision.[6]

Accordingly, we reverse common pleas' order.

_____

P. KEVIN BROBSON, Judge

Judge McCullough did not participate in the decision of this case.

_____

4. Protect the integrity of residential neighborhoods from the potential impacts of nonconforming uses.

Section 921.01.A of the Zoning Code makes clear that the City generally allows circumstances that legally came into existence prior to the enactment of the current Zoning Code to continue to exist, but that the goal is to bring as many aspects of the situation into compliance as reasonably possible. A substantial increase in the nonconformity of the setbacks of the Property would be inconsistent with the purpose of the City's Zoning Code.

[6] Because the Court concludes that Applicant failed to meet the requirements for a variance based on unnecessary hardship, we need not consider Appellants' remaining arguments.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Graybrook and Donna Kell,    :
                       Appellants    :
                                     :
                 v.              :     No. 250 C.D. 2017
                                     :
City of Pittsburgh Zoning Board of    :
Adjustment and City of Pittsburgh    :

# **O R D E R**

AND NOW, this 21st day of December, 2017, the order of the Court of Common Pleas of Allegheny County, dated January 30, 2017, is REVERSED.

_____
P. KEVIN BROBSON, Judge