# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal by Grande Land, L.P. from : 
the Decisions of the North Manheim : 
Township Zoning Hearing Board : 
Dated June 28, 2016 : No. 228 C.D. 2017
 : Argued:  October 17, 2017
 : 
Appeal of: Grande Land, L.P. : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
　　　　　   HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　   HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY JUDGE BROBSON　　　　　FILED:  November 17, 2017

Grande Land, L.P. (Grande Land) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court), dated February 1, 2017.  The trial court affirmed the decision of the North Manheim Township Zoning Hearing Board (ZHB), denying Grande Land's application for a special exception (Application).  For the reasons set forth below, we affirm.

Grande Land is the owner of a 12.9-acre parcel of land (Property) located in North Manheim Township (Township), Schuylkill County.  The Property is contained within the Chestnut Hill Subdivision.  Adjacent to the Property are two additional parcels of land:  (1) Common Area A, which is comprised of 7.1 acres; and (2) Common Area B, which is comprised of 4.3 acres (Common Area A and Common Area B are hereinafter collectively referred to as "Adjacent Parcels").  The Property is zoned R-2 Medium Density Residential (R-2).  Section 403.3 of the North Manheim Township Zoning Ordinance (Ordinance) permits townhouse and multi-family dwelling units in an R-2 zoning district by special exception in

accordance with Section 504 of the Ordinance. On March 3, 2016, Grande Land filed its Application with the ZHB, seeking a special exception to construct an apartment complex containing seventy-two multi-family apartment units on the Property. The ZHB conducted a meeting on Grande Land's Application on May 23, 2016.

At the meeting, Grande Land presented the testimony of Stephen Bensinger (Bensinger), a professional land surveyor. (Reproduced Record (R.R.) at 93a.) Bensinger testified regarding the details of Grande Land's Application and the proposed development's compliance with the Ordinance's requirements governing special exceptions for multi-family dwellings in an R-2 zoning district. Bensinger stated that the proposed plan (Site Plan) includes eight buildings, which will collectively contain seventy-two, two-bedroom apartments, each ranging from 900 to 1,000 square feet. (*Id.* at 60a, 95a-96a.) Bensinger stated further that public water and sewer are available for the Property and there is an existing sanitary sewer pump station located on the Property. (*Id.* at 96a, 98a.) He explained that he had received a letter from the Borough of Schuylkill Haven, indicating that water is available for the Property. (*Id.* at 63a, 98a.) He explained further that the Planning Module for Land Development (Planning Module) is approved by the Pennsylvania Department of Environmental Protection (DEP) and indicates that sanitary sewer service is also available for the Property. (*Id.* at 64a-67a, 98a.) Bensinger testified that after development, 25.5 percent of the Property would remain open space and would not include front, side, or rear yards. (*Id.* at 99a.) He also testified that thirty-five percent of the total area developed would be set aside for noncommercial open space and that the proposed development of the Property complies with all of the requirements and exclusions relative to common open space areas.

2

(*Id.* at 104a-06a.) When questioned by the ZHB about whether detention basins were included in the open space calculations, the following exchange took place:

> [ZHB]: Wait. I want to question.
> In your open space calculations, did you include the detention pond as open space. [sic]
>
> [Bensinger]: They were all calculated per the [O]rdinance, and they were all just for the 12.9-acre tract of land[, the Property].
>
> [ZHB]: Well, that didn't answer my question. Was the pond area considered open space? [T]he detention basin.
>
> [Bensinger]: I don't recollect the [O]rdinance per se. Whatever the [O]rdinance required is what we did.
>
> [Counsel for Grande Land]: Well, the [O]rdinance says you exempt out.
>
> [Bensinger]: Then we exempted it out.

(*Id.* at 125a-26a.) Bensinger explained further that while Grande Land agreed to assume responsibility for the maintenance of the Adjacent Parcels at the request of the Township, the Adjacent Parcels do not have anything to do with the Property and were not needed to satisfy the dimensional and bulk requirements of the Ordinance. (*Id.* at 106a-07a.)

Grande Land also presented the testimony of Fred Grande (Grande).[1] Grande testified regarding Grande Land's ownership of the Property, the business structure of Grande Land, and the authorization obtained from Grande Land's general partner to file the Application and appear on Grande Land's behalf. (*Id.* at 116a.) Grande also testified that Grande Land has agreed to maintain the Adjacent Parcels at the Township's request, even though the Adjacent Parcels are not Grande Land's responsibility. (*Id.* at 117a.) When asked what Grande Land will

---

[1] Following the testimony of Grande Land's witnesses, the ZHB opened the meeting up to public comment. (R.R. at 119a, 138a-75a.)

3

be doing with the Adjacent Parcels, Grande explained: "Well, we're going to – we're going to maintain, cut the grass and stuff and, you know, put it together with apartments. When we are cutting the grass for the apartments and stuff, it's going to be the same way." (*Id.*)

On June 28, 2016, the ZHB rendered its decision, denying Grande Land's Application.[2] In so doing, the ZHB made the following relevant findings of fact:

16. Ordinance 504.2[3] requires that the proposed development shall be served by public water supply and sewage disposal systems approved by [DEP].

. . . .

18. Exhibit A-6 is entitled "Planning Module for Land Development."

19. Exhibit A-6 is undated, but was prepared on behalf of XAR Developers Inc., a prior property owner and original developer of Chestnut Hill Subdivision.

20. Exhibit A-6 states that public sewage was proposed for the project. However, at the time this document was created, [Grande Land's] proposed 72-unit apartment development was neither in existence nor specifically planned.

21. XAR Developers conveyed the parcel to [Grande Land] in February 2004.

---

[2] The ZHB held a second meeting on June 28, 2016. (R.R. at 26a.) The purpose of the meeting was to consider and rule upon Grande Land's Application. (*Id.*) After announcing its decision at the June 28, 2016 meeting, the ZHB also issued written notice of its decision. (*Id.*) Thereafter, on July 1, 2016, the ZHB issued findings of fact and conclusions of law in support of its June 28, 2016 decision. All further references to the ZHB's decision shall be considered to be references to the ZHB's July 1, 2016 findings of fact and conclusions of law.

[3] Section 504.2 of the Ordinance provides: "The proposed development shall be served by public water supply and sewage disposal systems approved by [DEP]."

22. Exhibit A-6 is the only evidence presented by [Grande Land] to support the sewage disposal requirement of Ordinance 504.2.

23. Exhibit A-6 does not contain any reference to [DEP] approval being granted.

. . . .

31. The minimum open space requirement is [twenty-five] percent, which does not include front, side and rear yards of individual buildings.[4]

32. The open space calculations in this project do not include the front, side and rear yards of individual buildings.

33. Testimony from the witness is that the open space being provided is 25.5 percent, which exceeds the minimum requirement by 0.5 percent.

. . . .

36. Ordinance 504.4(a) requires that [the] maximum length of a multi[-]family building shall be 128 feet. No testimony or evidence was provided to establish the length of any proposed multi-family building.

. . . .

51. Ordinance 504.4(j)[5] requires a minimum of [twenty-five] percent of the total development to be

---

[4] The twenty-five percent minimum open space requirement is set forth in Section 504.3 of the Ordinance.

[5] Section 504.4(j) of the Ordinance provides:

No less than twenty [sic] percent (25%) of the total area of the development shall be permanently set aside for non-commercial common open space purposes, such as parks, recreation or conservation of natural features. The common open space areas shall be suitable for the designated purpose and contain no slopes greater than 20%, basins, structures, or parking facility except as related to and incidental to open space uses. Common open space areas may be reserved for private use or dedicated to the Township, if acceptable to the Township. For land which is not dedicated to the Township, a written agreement satisfactory to and approved by the Township shall be made for the perpetual preservation and maintenance.

permanently set aside for common open space purposes, and that these open space areas shall be suitable for the designated purpose and contain no slopes greater than [twenty] percent, basins, structures or parking facility except as related to and incidental to the open space uses.

52. Testimony from [Grande Land's] witness is that the open space being provided is approximately [thirty-five] percent. In addition to the 12.9[-]acre portion of the parcel that is being developed, [Grande Land's] parcel also contains 7.1 acres north of Stoney Run Road, and another portion east of Cross Creek Road.

53. The open space areas designated on [Grande Land's] Exhibit A-3 depicts [sic] two (2) existing detention basins and a wetlands area in the open space area of the 12.9[-]acre tract.

54. On this same exhibit, the plan indicates that the 7.1[-]acre open space area to the north of Stoney Run Road includes at least three (3) existing detention basins.

55. [Grande Land's] Exhibit A-8 is an original development plan from the prior owners and developers, XAR Developers, Inc., which indicates elevation contours of the entire development, including the 7.1[-]acre portion to be set aside as common open space area. Based on the depiction on Exhibit 8 [sic], this open space appears to be at an extreme slope in elevation. There has been no testimony presented that this slope does not exceed [twenty] percent.

56. Testimony from [Grande Land's] witness Stephen Bensinger was equivocal as to whether the detention basins were considered in calculating the common open space requirements.

(ZHB Decision at 3-6 (footnotes added).) Based on those findings of fact, the ZHB made the following relevant conclusions of law:

---

Section 504.4(j) of the Ordinance is inconsistent regarding whether a minimum of twenty percent or twenty-five percent non-commercial common open space is required, however, the parties appear to take the position that twenty-five percent is required. As a result, we will analyze Section 504.4(j) of the Ordinance as if it requires at least twenty-five percent non-commercial common open space.

5.	The [ZHB] finds that [Grande Land] has not satisfied the requirements of Ordinance 504.2. Specifically, the only evidence submitted regarding a sewage disposal system approved by [DEP] are the documents submitted as Exhibit A-6, entitled "Planning Module for Land Development." This is a document apparently prepared by prior owners of the [P]roperty, XAR Developers[,] at some time prior to 2004, and only addressed single family lots, not a multi[-]family structure or development. Further, the evidence of record does not confirm that [DEP's] approval has been obtained for sewage disposal for this additional capacity required by the proposed multi[-]family development.

6.	The [ZHB] finds that [Grande Land] has satisfied the area and bulk requirements of Ordinance 504.3, with the exception of 504.3(g), open space requirement, discussed in conclusion No. 10, below.

. . . .

9.	The [ZHB] finds that [Grande Land] has failed to satisfy the requirements of Ordinance 504.4(a). No evidence has been presented that the maximum length of any multi[-]family building does not exceed 128 feet.

10.	The [ZHB] finds that [Grande Land] has failed to satisfy the requirements of Ordinance 504.4(j). Specifically, the common open space areas in the 12.9-acre portion of the parcel include detention basins and a sizable wetlands area. An additional 7.1-acre portion of the parcel designated as a common open space area also contains at least three detention basins, and is on a slope greater than [twenty] percent, all in violation of 504.4(j) and 504.3(g).

(ZHB Decision at 6-7.)

Grande Land appealed the ZHB's decision to the trial court, and the trial court granted intervenor status to Barry Idell, Jack Furman, Walter Vernitsky,

7

and Philip Bradtmiller (Intervenors) based upon the stipulations of the parties.[6] Subsequently, on February 1, 2017, the trial court issued a decision, denying Grande Land's appeal.

On appeal to this Court,[7] Grande Land argues that the ZHB and the trial court abused their discretion and committed errors of law by denying its Application and, in so doing: (1) concluding that Grande Land failed to meet the sewage disposal system requirement set forth in Section 504.2 of the Ordinance; (2) concluding that Grande Land failed to meet the requirement set forth in Section 504.4(a) of the Ordinance regarding the maximum length for a multi-family building; and (3) concluding that Grande Land failed to meet the open space requirement set forth in Section 504.4(j) of the Ordinance.

First, we address Grande Land's argument that the ZHB and the trial court abused their discretion and committed errors of law by concluding that Grande Land failed to meet the sewage disposal system requirement set forth in Section 504.2 of the Ordinance. More specifically, Grande Land argues that it satisfied the requirements of Section 504.2 of the Ordinance by establishing through its Application and Bensinger's testimony that public sewer would be used for the development of the Property. Grande Land argues further that Section 504.2 of the Ordinance only requires that it establish that its proposed type of sewage disposal

---

[6] North Manheim Township also intervened before the trial court as of right pursuant to Section 1004-A of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11004-A.

[7] "Where a trial court takes no additional evidence in an appeal from a decision of the [ZHB], this Court is limited to considering whether the [ZHB] erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012). "A [ZHB] abuses its discretion if its findings are not supported by substantial evidence." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 75 (Pa. 2007).

system would be acceptable to DEP, not that DEP had approved a specific sewage disposal system for the Property, and, therefore, the ZHB should have granted its Application with a condition that it obtain DEP's approval. Grande Land also argues that even though it was not required to do so, it entered the Planning Module into evidence, which establishes that it is able to provide a sewage disposal system for the Property.

In response, the ZHB argues that Grande Land failed to satisfy the requirements of Section 504.2 of the Ordinance because the Planning Module is outdated and does not indicate that any calculations were performed based on the sanitary demand for multi-family structures at the Property or that DEP had approved the proposed sewage disposal system set forth therein. Similarly, Intervenors argue that Grande Land failed to satisfy the requirements of Section 504.2 of the Ordinance because Grande Land failed to establish DEP's approval for its sewage disposal system as a condition precedent to its Application. More specifically, Intervenors argue that while Bensinger may have testified that public sewer is a method that is generally acceptable to DEP, Bensinger's testimony was insufficient to establish that public sewer was appropriate or feasible for the development of the Property—*i.e.*, "that actual sewer service could be provided to the [seventy-two] multi-family units." (Intervenors' Br. at 27.) Intervenors argue further that the documents relied upon by Grande Land to buttress Bensinger's testimony—*i.e.*, the Planning Module, the project narrative, and the Site Plan—do not assist Grande Land in establishing that a DEP-approved sewage disposal system is available for its proposed development of the Property.

Section 504.2 of the Ordinance requires that an applicant seeking a special exception for multi-family dwelling units in an R-2 zoning district establish

9

that the property will be served by "sewage disposal systems approved by [DEP]." Before we can determine whether the ZHB and trial court abused their discretion and committed errors of law in concluding that Grande Land failed to satisfy the sewage disposal requirements of Section 504.2 of the Ordinance, we must first determine what it means for a sewage disposal system to be "approved by DEP" in the context of an application for special exception. Our prior decision in *In re Drumore Crossings, L.P.*, 984 A.2d 589 (Pa. Cmwlth. 2009), *appeal denied*, 4 A.3d 1054 (Pa. 2010), is instructive on this issue.

In *Drumore Crossings*, the zoning ordinance required that a conditional use applicant demonstrate that the property will use an "approved means" of sewage disposal. *Drumore Crossings*, 984 A.2d at 596. In order to satisfy this requirement, the applicant presented expert testimony regarding three types of on-site treatment plants that used drip irrigation. *Id.* at 592. The applicant's expert testified that each of the three systems were feasible for the property and have been approved by DEP. *Id.* The applicant's expert also testified that "one of the three systems would be selected at the time of construction and in accordance with directives of DEP, which had responsibility for permitting on-site sewage treatment plants." *Id.* Based on this evidence, the hearing officer denied the conditional use application, concluding, *inter alia*, that the applicant failed to comply with the zoning ordinance because the applicant did not present any evidence that an approved means of sewage disposal would be used at the property. *Id.* at 593. The trial court affirmed the hearing officer's denial of the conditional use application. *Id.* at 594. On appeal to this Court, we concluded that the applicant "presented uncontroverted testimony that an on-site mechanical treatment plant using drip irrigation was a method regularly approved by DEP[, which] is all it was required to do under" the zoning ordinance.

10

*Id.* at 596.  In so doing, we noted that "[a]n applicant cannot be required to provide specific engineering design details of its proposed development at the conditional use stage[,]" and "it is the province of DEP, not a township, to issue a permit to a sewage treatment plant."  *Id.*

Section 504.2 of the Ordinance, which provides that "[t]he proposed development shall be served by . . . sewage disposal systems approved by DEP," does not set forth any specific requirements that must be established.  Had the Township desired an applicant to establish specific details of its proposed sanitary sewage disposal system, it could have included such a requirement in the Ordinance.  Applying our holding in *Drumore Crossings* to the facts of this case, we must conclude that the bare minimum requirement established by Section 504.2 of the Ordinance only required Grande Land to represent that it would employ a sewage disposal system that is regularly approved by DEP.  Grande Land did not need to prove the feasibility of its proposed sewage disposal system to the ZHB.  Instead, Grande Land will address those details at a later point in time through the approval process with DEP.  Thus, Grande Land's Application, which attached a copy of the Planning Module indicating that the Property would be served by public sewer, a method that has obviously been approved by DEP, and Bensinger's testimony that public sewer was available for the Property was sufficient for purposes of ZHB approval.  For these reasons, we must conclude that the ZHB and the trial court committed errors of law by concluding that Grande Land failed to meet the sewage disposal requirements set forth in Section 504.2 of the Ordinance.

Next, we address Grande Land's argument that the ZHB and the trial court abused their discretion and committed errors of law by concluding that Grande Land failed to meet the requirement set forth in Section 504.4(a) of the Ordinance

11

regarding the maximum length for a multi-family building. More specifically, Grande Land argues that the Site Plan, which was attached to its Application and admitted into evidence as Exhibit A-3, and the Lighting Plan, which was attached to its Application and admitted into evidence as Exhibit A-9, specifically set forth the dimensions of the eight apartment buildings that it proposes to build on the Property and that none of those buildings exceed the 128 feet maximum length requirement. In response, the ZHB argues that Grande Land failed to meet its burden of proof under Section 504.4(a) of the Ordinance because: (1) Grande Land did not offer any testimony regarding the length of its proposed multi-family buildings; and (2) the testimony presented by Grande Land "did not reference any addendum to the [A]pplication [or] the [S]ite [P]lan which was entered as Exhibit A-3." (ZHB's Br. at 10.) The ZHB argues further that the burden is not on the ZHB to search the record for evidence to support Grande Land's Application. Similarly, Intervenors argue that Grande Land had the burden of "alerting the [ZHB] to the relevant evidence" establishing the dimensions of the proposed multi-family buildings, which it failed to do, and, therefore, Grande Land "cannot complain that the [ZHB] committed an error of law or an abuse of discretion." (Intervenors' Br. at 33-34.) Intervenors argue further that the Site Plan and Lighting Plan do nothing more than establish proposed building dimensions and "[t]here is nothing in the record stating that the dimensions were not subject to change[] or that there was a maximum building length limitation being imposed." (Intervenors' Br. at 34.)

While it may not have been apparent to the ZHB at the time that it rendered its decision, it is evident to this Court that Grande Land's Application contained exhibits—namely Exhibits A-3 (the Site Plan) and A-9 (the Lighting Plan)—establishing that its proposed multi-family buildings would not

exceed 128 feet in length. Grande Land not only attached those exhibits to its' Application, but Grande Land also admitted them into evidence at the hearing before the ZHB. A cursory review of those exhibits establishes that none of the eight buildings that Grande Land proposes to build on the Property exceed the 128 feet maximum length requirement set forth in Section 504.4(a) of the Ordinance. The ZHB and Intervenors would like this Court to adopt the trial court's reasoning that the ZHB is not required to search through exhibits to determine whether a litigant has presented sufficient evidence to sustain its burden of proof. The relevant exhibits were attached to Grande Land's Application, and we simply cannot set precedent that could relieve a zoning hearing board from reviewing the very document upon which it rendered its decision. In addition, Intervenors' argument that Grande Land did not present any evidence to establish that the proposed building dimensions were not subject to change is without merit. In the event that the ZHB grants a special exception, Grande Land would be required to develop the Property as approved by the ZHB and in accordance with the Ordinance and, thus, could not exceed the maximum length requirement for multi-family buildings. As a result, we must conclude that the ZHB and the trial court committed errors of law and abused their discretion by concluding that Grande Land failed to meet the requirement set forth in Section 504.4(a) of the Ordinance regarding the maximum length for a multi-family building.

Lastly, we address Grande Land's argument that the ZHB and the trial court abused their discretion and committed errors of law by concluding that Grande Land failed to meet the open space requirement set forth in Section 504.4(j) of the Ordinance. More specifically, Grande Land argues that it presented evidence and testimony that it met the open space requirement using only the Property, and,

13

therefore, the ZHB had no basis to deny its Application based upon findings related to the Adjacent Parcels. Grande Land argues further that there also was no basis for the ZHB to deny its Application based on the inclusion of wetland areas in the open space calculation because Section 504.4(j) of the Ordinance does not provide that wetland areas are to be excluded therefrom. Grande Land also argues that there is no doubt that the Township will approve a written agreement for the perpetual preservation and maintenance of the undedicated open space because the Township has requested that Grande Land assume responsibility for the Adjacent Parcels.

In response, the ZHB argues that Grande Land failed to satisfy the requirements of Section 504.4(j), because Section 504.4(j) of the Ordinance "specifically states that sloped areas greater than [twenty] percent and basins are not to be part of common-use areas, regardless of whether these areas are exempted from calculating [the] percentage of [open space] coverage," and Grande Land did not offer any testimony to describe whether the slope located in Common Area A is greater than twenty percent and Grande Land's exhibits clearly demonstrate that there are detention basins located on both the Property and Common Area A. (ZHB's Br. at 15.) The ZHB argues further that the Adjacent Parcels, including Common Area A, must be included in Grande Land's open space calculations because the Adjacent Parcels were depicted as part of the entire parcel owned by Grande Land on Exhibit A-3[8] and, thus, are owned by Grande Land. Intervenors argue that Grande Land has failed to meet its burden of proof under Section 504.4(j) of the Ordinance because the record contains "only scant, limited testimony regarding compliance with the open space requirement, which amounted to nothing

_____

[8] In its brief, the ZHB references Exhibit A-7, as evidence that the Adjacent Parcels are part of the entire parcel owned by Grande Land. Upon review of the certified and reproduced records, it appears that the ZHB intended to reference Exhibit A-3, not Exhibit A-7.

14

more than unsupported, conclusory statements that were completely untethered from any record facts." (Intervenors' Br. at 36.) Intervenors argue further that Grande Land did not present any testimony or evidence that Grande Land was dedicating the open space to the Township or that the Township had approved a written agreement for the perpetual preservation and maintenance of the undedicated open space as required by Section 504.4(j) of the Ordinance.

Here, the ZHB found that Bensinger's testimony was equivocal regarding whether the detention basins were considered in calculating the common open space requirements of the Ordinance.[9] In essence, the ZHB found that Bensinger's conclusory statement that the open space calculations met the requirements of the Ordinance was not supported by substantial evidence. We agree. When questioned by the ZHB about the open space calculations, Bensinger could not recall the specific requirements of the Ordinance or whether the detention basins were included as open space in the calculations. Grande Land has also not directed us to, nor can we find, any place in the record where the open space calculations are explained with any detail. For these reasons, we cannot conclude that the ZHB and the trial court abused their discretion or committed errors of law by concluding that Grande Land failed to meet the open space requirement set forth in Section 504.4(j) of the Ordinance.

Because the ZHB and the trial court did not abuse their discretion or commit errors of law by concluding that Grande Land failed to meet the open space requirement set forth in Section 504.4(j) of the Ordinance, the trial court did not err

---

[9] Because there is a detention basin located on the Property in addition to the three detention basins located in Common Area A, we need not consider whether the ZHB improperly considered findings related to the Adjacent Parcels in denying Grande Land's Application.

15

in affirming the ZHB's denial of Grande Land's Application. Accordingly, we affirm the trial court's order.


                _____

                P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Appeal by Grande Land, L.P. from : 
the Decisions of the North Manheim : 
Township Zoning Hearing Board : 
Dated June 28, 2016 :   No. 228 C.D. 2017
                             :
                             :
Appeal of: Grande Land, L.P. :

# **O R D E R**

AND NOW, this 17th day of November, 2017, the order of the Court of Common Pleas of Schuylkill County is hereby AFFIRMED.

 

 

                                         
_____

                                         
P. KEVIN BROBSON, Judge