**Arthur PAULSON, Appellant,**

v.

**The ZONING HEARING BOARD OF WALLACE TOWNSHIP, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1998.

Decided May 8, 1998.

---

Ronald M. Agulnick, West Chester, for appellant.

John L. Hall, West Chester, for appellee.

Before SMITH and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Arthur Paulson appeals from an order of the Court of Common Pleas of Chester County that affirmed as modified an order of the Zoning Hearing Board (Board) of Wallace Township (Township). Paulson appealed from an enforcement notice issued by the Township's Zoning Officer regarding his go-cart rental and go-cart racetrack business, which is located in a flood hazard district. In the alternative, he applied for a special exception for fill he had placed on a driveway and raised a validity challenge to the Zoning Ordinance. The Board granted a special exception but imposed a condition limiting the hours of operation.

Paulson raises four questions for review by the Court. They are: where a landowner appeals from a zoning officer's enforcement notice and seeks only recognition that his use is a lawful nonconforming use (and not expansion or change thereof), may the Board in sustaining the appeal impose a condition limiting hours of operation; where a landowner seeks a special exception for a single placement of fill in a flood plain, may the Board in granting the application attach a condition totally unrelated to the exception granted; where the matter was not raised in the enforcement notice or the hearing, did the Board's sua sponte imposition of a condition limiting hours of operation constitute an error of law and an abuse of discretion; and was imposition of the condition an error of law or an abuse of discretion when the condition and the finding upon which it was based assertedly are totally unsupported by competent evidence.

I

The Township's Zoning Officer sent Paulson a notice dated November 30, 1994, stating that she had identified various failures

to comply with the Zoning Ordinance and directing Paulson to cease and desist from further violations. Paulson appealed to the Board, and the Township ultimately stated two issues: (1) Paulson had added stone fill to the driveway and "pit parking" area without first obtaining the special exception required for placement of fill in this flood hazard area, and (2) by permitting go-carts owned by others to race on the track, Paulson had changed or expanded the prior nonconforming use or had created a new, unauthorized use. Paulson maintained his position that the addition of the stone was in the nature of permitted maintenance; however, in the alternative he requested a special exception for application of the stone, if such were deemed necessary. If the current use were deemed to be an improper expansion or change of use, Paulson raised a challenge to the validity of the Zoning Ordinance as being exclusionary for failure to provide for a use of "outdoor recreation" or "vehicle racing" or "go-cart riding track." The Board conducted a hearing.

The Board's uncontested findings show that James Wilson purchased the subject property in 1965 and constructed a go-cart track for recreational use. In the mid-1960's Wilson permitted a local club to race go-carts there, which use lasted about eight years. Next a local sports car association used the property for about five years, and the track was considerably improved. The Boy Scouts then used the property for picnics and for racing go-carts until about 1985. After that Wilson permitted local residents to run go-carts on the track, and he allowed Paulson to use the property without charge for a go-cart rental operation until Paulson purchased it in 1986. In 1985 Paulson sought permission from the Township's Board of Supervisors (Supervisors) to conduct the go-cart rental operation because he thought that might be considered to be different from the racing use, as to which he believed that he had a vested right. As reflected in the minutes of the meeting of April 18, 1985, the Supervi-

sors approved "go-cart track" use, noting that the track existed before zoning and was a nonconforming use.[1]

From 1985 until the time of hearing the use had remained essentially the same, although the intensity had increased with the popularity of go-cart racing. In 1994 the racing go-carts generated great noise, because they lacked mufflers, and the events ran until very late hours. After complaints to the Township, the go-carts were equipped with mufflers, and since then excessive noise has not been a problem. The general areas of driveways, parking areas and "pit parking" for vehicles bringing go-carts to the track, along the eastern side of the property, existed before the adoption of zoning. Paulson added fill in the nature of stone to the property, both as an improvement and for maintenance.

The property had two points of access before the adoption of zoning, a paved driveway on the western side and a driveway with a broken macadam surface on the eastern side, which is what Paulson maintained by adding the stone, along with certain parking areas. Although use of the track sometimes had been sporadic, there never was an intent to abandon the nonconforming use. Paulson vigorously contests Finding No. 16, which states that the nature of the nonconforming use is as a go-cart rental business generally operating from 10:00 a.m. to 10:00 p.m. and go-cart racing facilities operating during the day on weekdays no later than 6:00 p.m. and on weekends generally ending around 9:00 p.m., as well as accessory uses not at issue.

Based on its findings, the Board concluded the following: the use of the premises for a go-cart racing track preceded any zoning and was a lawful nonconforming use; the use as a go-cart rental business was permitted in accordance with the meeting of the Township Supervisors of April 18, 1985; although the intensity of the use had increased, this was the result of constitutionally protected natural growth and did not constitute a new use, change of use or expansion of use; and the

1. The Zoning Ordinance offered into evidence, Ex. T–4, was enacted April 19, 1988. The minutes of the Supervisors' meeting of April 18, 1985, Ex. T–5, imply that some form of zoning applied before 1988. Nonetheless, Section 1601 A. of the Zoning Ordinance authorizes continuation of any lawful use existing on the effective date of the Zoning Ordinance.

stone had been deposited both for maintenance and for improvement in the form of fill, but Paulson was entitled to a special exception. The Board granted a special exception, with conditions. Condition No. 4 states that hours of operation shall be limited to 10:00 a.m. to 10:00 p.m. seven days a week for the rental of go-carts; that go-carts brought to the premises by others for racing or for other recreational uses shall cease using the track no later than 6:00 p.m. Sunday through Thursday and no later than 9:00 p.m. Friday and Saturday; and that no racing shall start before 11:00 a.m. on any day.

■ Only Paulson appealed to the common pleas court, which considered the matter without receiving additional evidence. The common pleas court struck a requirement in a separate condition that Paulson secure approval before performing any maintenance to the premises as being unrelated to the purposes set forth in Section 801 of the Zoning Ordinance, relating to flood hazard and wet soils district, but otherwise affirmed the order of the Board.[2]

## II

■ Paulson first emphasizes that the Board sustained his appeal from the Zoning Officer's enforcement letter, concluding that the increase in the intensity of his use does not constitute a new use, change of use or expansion of use, and that the Township did not appeal from that determination.[3] He notes that a lawful nonconforming use establishes a vested property right in the property owner, which cannot be abrogated or destroyed unless it is a nuisance, it is abandoned or it is extinguished by eminent domain. *Gross v. Zoning Board of Adjustment*, 424 Pa. 603, 227 A.2d 824 (1967). Once it has been determined that a nonconforming use is in existence, an overly technical assessment of that use cannot be used to

stunt its natural development and growth. *Township of Chartiers v. William H. Martin, Inc.*, 518 Pa. 181, 542 A.2d 985 (1988). A nonconforming use cannot be limited to the precise magnitude that existed on the day when zoning was adopted, and the owner cannot be prevented from making necessary additions to an existing structure as needed to accommodate increased trade, so long as such additions are not detrimental to the public health, safety and welfare. *Id.* A municipality is without power to compel a change in the nature of a use where property was not restricted when purchased and is being used for a lawful use. *Yocum Zoning Case*, 393 Pa. 148, 141 A.2d 601 (1958).

Paulson refers to the Pennsylvania Supreme Court's invalidation of ordinances providing for the amortization of nonconforming uses as being per se confiscatory and violative of the indefeasible right of citizens to possess and protect property found in Article I, Section 1 of the Pennsylvania Constitution. *PA Northwestern Distributors, Inc. v. Zoning Hearing Board of Township of Moon*, 526 Pa. 186, 584 A.2d 1372 (1991). Citing testimony, he asserts that, although the go-cart rental aspect of his business involves renting for short periods to random drivers, a racing club will use the premises only if it can race an entire card of events, which typically ends at 1:00 a.m. Paulson notes that his use was not restricted in terms of hours of operation when he purchased the property, and he argues that the restriction on his hours of operation interferes with the commercial viability of the use and is just as destructive as a requirement of amortization.

Further, Paulson contends that the Board lacked statutory authority to impose a condition upon his use in the course of ruling upon his appeal from the enforcement letter issued by the Zoning Officer. Section 909.1(a)(5) of the Pennsylvania Municipalities Planning

---

2. Where a common pleas court has not received additional evidence in considering a zoning appeal, this Court's review is to determine whether the zoning hearing board committed an error of law or an abuse of discretion. *Strunk v. Zoning Hearing Board of Upper Milford Township*, 684 A.2d 682 (Pa.Cmwlth.1996).

3. Paulson's argument that the Board's limitation on his hours of operation violated his due process rights because the Board raised this point sua sponte in its decision and order is waived for failure to raise and preserve this issue before the common pleas court. *DeIuliis v. Zoning Board of Adjustment of City of Pittsburgh*, 155 Pa. Cmwlth. 569, 625 A.2d 757 (1993).

Code (MPC),[4] grants original jurisdiction to zoning hearing boards to hear applications for variances pursuant to Section 910.2 of the MPC,[5] and Section 910.2(b) specifically authorizes zoning hearing boards to attach reasonable conditions to the grant of a variance. Similarly, Section 909.1(a)(6) grants original jurisdiction to hear applications for special exceptions pursuant to Section 912.1,[6] which also expressly authorizes the attachment of reasonable conditions.

■ By contrast, Section 909.1(a)(3), 53 P.S. § 10909.1(a)(3), provides for the zoning hearing board to hear appeals from determinations of the zoning officer in matters including the issuance of any cease and desist order, among others, but it does not provide for the attachment of conditions in connection with such appellate review. The Court agrees with Paulson that, pursuant to the maxim of statutory construction "expressio unius est exclusio alterius," the legislature's express authorization for zoning hearing boards to attach conditions when ruling upon applications for variances or special exceptions in their original jurisdiction, along with the lack of any such provision in the appellate jurisdiction provided in Section 909.1(a)(3), indicates that zoning hearing boards lack the authority to attach conditions when proceeding under Subsection (a)(3). *See Pisnanont v. State Board of Medicine,* 680 A.2d 911 (Pa.Cmwlth.1996).

Paulson next contends that the limitation on his hours of operation as a condition attached to the grant of a special exception for his placement of stones in the driveway and "pit parking" areas is invalid as being entirely unrelated to the subject matter and the purpose for which the special exception was granted. He refers to *Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), where a state commission regulating use of and access to beaches approved an application to tear down a small bungalow and replace it with a much larger residence but conditioned approval on the owners' granting an easement for the

public to pass along the beach, which would facilitate access to public beaches nearby. The Supreme Court concluded that the condition had no nexus to any legitimate governmental purpose relating to the requirement for approval of the construction, and it therefore constituted a taking of property without just compensation.

Paulson argues that there is no relationship between a special exception to place fill in a flood plain and the hours of operation of a go-cart track. He relies also upon *Van Sciver v. Zoning Board of Adjustment,* 396 Pa. 646, 152 A.2d 717 (1959). There an applicant sought authority to operate an unattended, 24–hour laundromat; the zoning board of adjustment granted permission similar to a special exception, conditioned in part upon limiting hours of operation to 8:00 a.m. to 8:00 p.m., Monday through Saturday. On the question of limitation of hours, the Supreme Court concluded that the board's asserted reasons for the restrictions—that the machines emitted fumes and that the unattended business would attract persons who would possibly commit crimes—were not supported by any evidence of record and were simply conjectural. Further, the board had failed to show any reasonable relation between the perceived threats and the restriction—the machines would function no differently at night or on Sundays, any fumes would be emitted during permitted hours, and unsavory persons could turn up then as well.

The Township as Intervenor asserts first that the Board did not "condition" Paulson's use but rather "described" the use based upon the evidence presented. The Township notes that the use protected as nonconforming is that which existed when the ordinance was enacted and no other, 2 Robert S. Ryan, Pennsylvania Zoning Law and Practice § 7.1.5 (2d ed. 1981), and that the burden of proving the extent or existence of a nonconforming use rests with the property owner. *Municipality of Penn Hills v. Zoning Hear-*

4. Act of July 31, 1968, P.L. 805, *as amended,* Section 909.1 added by Section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a)(5).

5. Added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

6. Added by Section 91 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10912.1.

*ing Board of Municipality of Penn Hills,* 60 Pa.Cmwlth. 286, 431 A.2d 383 (1981). The daytime hours of operation have not been challenged, the Township notes, but it asserts that Paulson failed to meet his burden of showing that either the go-cart rental or the racing use was conducted during hours other than those found by the Board. The Township cites Paulson's testimony that lights were among improvements that he added to the track after he purchased it, N.T. at pp. 144–145, and it infers from his testimony and that of his predecessor that people did not use the track for racing after dark.

The Township contends that Paulson's argument as to commercial viability relying upon *PA Northwestern Distributors, Inc.* is misplaced, because Paulson did not contemplate renting the track to racers until after he started renting go-carts. It cites *Altman v. Ryan,* 435 Pa. 401, 257 A.2d 583 (1969), a case involving an action in equity to enjoin the nighttime operation of a freight forwarding business as a nuisance, for the proposition that no one has a right to operate a business into the night where the record reveals that neighbors are subjected to disturbing noises during normal sleeping hours. In Finding No. 8, the Township notes, the Board stated that the racing use created such a nuisance.

On the question of any relation between the restriction on hours of operation and the grant of the special exception, the Township notes that Section 604 of the MPC, 53 P.S. § 10604, states that among the purposes of zoning ordinances are the preservation of floodplains and prevention of loss of health, life or property from flood. Also, Section 801 of the Zoning Ordinance states that Article 8 is designed to minimize losses and problems that can occur in the flood hazard district by regulating the erection of structures and preserving natural floodplains to prevent increased flood volume and rate of flow. The Township asserts that dangers associated with floodwaters are greatly reduced where the users of the road onto the property can evaluate flood conditions in the light of day and that decreasing the intensity of the use decreases the amount of stone fill

that will need to be applied for maintenance. The Court concludes, however, that these very strained explanations fail to establish a reasonable connection between the grant of permission to add stone to improve a driveway in a floodplain and the Board's restriction on hours of operation.

It is apparent that the Board did limit the hours of operation in Condition No. 4, rather than simply "describe" the nonconforming use. Even if the limitation were regarded as being descriptive, however, it is plainly contrary to the Board's finding that in 1994 the go-carts ran until the very late hours of the evening and its acknowledgement that the intensity of the use had increased along with the popularity of the sport. The Township's misleading citation to the Board's Finding No. 8, which determined that the late-night use of the track resulted in a nuisance and loss of quiet enjoyment of neighboring property, ignores Finding No. 9, which states that after mufflers were required excessive noise has not been a problem.

This effort to frame the discussion in terms of nuisance, however, reveals the fallacy of the Township's position. The stones on the driveway, the item for which the special exception was sought, obviously did not cause any injury to neighbors. More fundamentally, the question of nuisance could not properly be raised in the present case. Even if the Board had not effectively retracted its finding that the operation created a nuisance, the Supreme Court has stated: "There was no question before the board as to whether appellant's operation of his lawfully existing nonconforming use should be abated; nor could there have been. Jurisdiction of such a problem is in another forum." *Pierce Appeal,* 384 Pa. 100, 119 A.2d 506 (1956). *See also Sanko v. Rapho Township,* 6 Pa. Cmwlth. 73, 293 A.2d 141 (1972) (where operation of a trap shooting club was permitted by special exception, the zoning hearing board correctly refused to consider whether the use constituted a private nuisance, lacking power to do so); 2 Pennsylvania Zoning Law and Practice §§ 9.2.1 and 9.3.8.

In view of the above, the Court need not consider Paulson's assertion that the record is devoid of any factual support for the times

selected by the Board as the limits of its hours of operation. The order of the court of common pleas is reversed insofar as it affirmed the limits on the hours of operation of Paulson's business imposed in Condition No. 4 of the Board's order. The order is affirmed in all other respects.

## ORDER

AND NOW, this 8th day of May, 1998, the order of the Court of Common Pleas of Chester County is reversed insofar as that order affirmed the limitation upon hours of operation of Arthur Paulson's nonconforming use of his property, and Condition No. 4 of the order of the Zoning Hearing Board of Wallace Township is invalidated. In all other respects the order of the court of common pleas is affirmed.