IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shyam Ventures, LLC,                          :
                        Appellant               :
                                                :
            v.                          :
                                                :
Zoning Hearing Board of the                   :
Borough of Castle Shannon and                 :    No. 56 C.D. 2023
Borough of Castle Shannon                     :    Argued: February 6, 2024


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION BY
JUDGE COVEY                                    FILED:  March 7, 2024


        Shyam Ventures, LLC (Appellant), appeals from the Allegheny County Common Pleas Court's (trial court) December 20, 2022 order denying its appeal from the Zoning Hearing Board of the Borough of Castle Shannon's (ZHB) July 7, 2022 decision (ZHB Decision) that denied and dismissed Appellant's appeal from the Borough of Castle Shannon (Borough) zoning officer's December 21, 2021 determination.  Appellant presents three issues for this Court's review: (1) whether the ZHB abused its discretion or erred as a matter of law by failing to apply the modified variance criteria applicable to requests for natural expansion of a lawful nonconforming use; (2) whether the ZHB abused its discretion or erred as a matter of law by concluding that Appellant's expansion of the preexisting retail component on its property located at 900 Sleepy Hollow Road in the Borough (Property) did not constitute a natural expansion of the lawful nonconforming truck rental and coin-operated laundry uses; and (3) whether the ZHB erred by ordering Appellant to cease the sale of various retail products and remove related display counters, shelf racks, cabinets, coolers, exterior garbage cans, and refrigerated cabinets from the Property.

The Property has been the site of a U-Haul vehicle rental business (U-Haul) and a coin-operated laundry/laundromat (Laundromat) for at least the last 16 years. On July 8, 2013, the Borough Council adopted Ordinance No. 891[1] as the Zoning Ordinance for the Borough (Zoning Ordinance). Consequently, the zoning district in which the Property is located was rezoned as an R-2 Single and Multi-Family Residential Zoning District. Appellant purchased the Property on July 13, 2018. The Property's sale to Appellant included personal property identified in an addendum to the sales agreement – washers and dryers, security cameras, a cold refrigerator for drinks, a computer, storage boxes, a change/coin machine, and overnight lock boxes for key drop-off – that had been used in connection with the preexisting U-Haul/Laundromat operation.

Borough Zoning Officer Paul Vietmeier (Zoning Officer) visited the Property on December 20, 2021, after the Borough's Police Chief notified him that Appellant had sold cigarettes to minors and that other items were being sold at the Property. The Zoning Officer visited the Property and observed and photographed coolers with a large assortment of soft drinks and several shelves and racks displaying various snack food items and other products for retail sale, including cigarettes, vape products, BIC lighters, potato chips, Slim Jims, pumpkin seeds, assorted candy bars, Lifesavers, gummies, Ho-Hos, Twinkies, and Pop-Tarts. The photographs also depicted coffee machines and an automatic teller machine (ATM). The Zoning Officer informed Appellant's employee during his December 20, 2021 inspection, and Appellant's owners at a later meeting at the Property, that these retail food, beverage, and other items unrelated to the U-Haul/Laundromat operation (hereinafter, subject retail items) could not be sold on the Property, and why.

---

[1] Borough of Chapman, Pa., Ordinance No. 891 (July 8, 2013).

By December 27, 2021 letter (Zoning Officer's Determination), the Zoning Officer notified Appellant:

> [The Property] is located within the Borough's R-2 Single and Multi-Family Residential [Zoning] District. With the adoption of the Borough's updated Zoning Ordinance in 2013, the U-Haul and [Laundromat] became a non[]conforming use within the R-2 [Z]oning [D]istrict. The U-Haul and [Laundromat] [were] permitted to continue to operate as a U-Haul rental and a [L]aundromat as their existence within the [Z]oning [D]istrict predated the update to the Zoning Ordinance as such grandfathering the use. Under the provisions of the Zoning Ordinance, the building may continue to operate as a non[]conforming use so long as the use is consistent with a coin-operated laundry, and a motor vehicle rental of U-Hauls defined within the Zoning Ordinance. Should the building no longer operate as a coin-operated laundry and a motor vehicle rental of U-Hauls, the use shall revert to presently permitted uses within the R-2 Single and Multi-Family Residential [Zoning] District.
>
> As a follow-up to the conversation we had on December 21, 2021[,] in the [Borough] Police Department, . . . [the Property] would not be allowed to operate as a convenience/express mini-mart.
>
> As the Zoning Officer for [the] Borough, you shall remove [sic] all cigarettes, vape products, CBD gummies, all candy[,] bags of snacks, coolers of various soft drinks, milks, juices, toilet paper, ice cream[,] and all display counters, shelf racks, cabinets, coolers[,] and orange crates. On the exterior of the building, you will have to remove the garbage cans and refrigerated cabinet beyond the side of the building facing Columbia Drive, from the view of a person standing or driving by. ***These shall all be removed within ten (10) days***.
>
> You would be allowed one coin-operated soda pop machine, a coin-operated soap machine, and one coin-operated snack machine for the convenience of the patrons that are using the laundry machines.

> The Borough desires a safe and pleasing appearance of the community and shall not be dangerous, unsafe[,] or unsanitary.

Reproduced Record (R.R.) at 258a. The Zoning Officer again visited the Property on January 11, 2022, and took photographs reflecting that the subject retail items remained on racks or inside coolers, and were available for purchase on the Property.

On January 13, 2022, Appellant appealed from the Zoning Officer's Determination to the ZHB. In its appeal, Appellant contended that the sale of the subject retail items the Zoning Officer's Determination banned is consistent with the Property's status as a preexisting nonconforming use and is a natural expansion thereof.[2] On March 29, 2022, the ZHB held a hearing at which several witnesses, including the Zoning Officer, testified, and the parties offered exhibits and photographs into evidence. At the ZHB's July 7, 2022 public meeting, the ZHB unanimously denied the appeal and affirmed the Zoning Officer's Determination that Appellant's use of the Property beyond the U-Haul/Laundromat operation to sell the subject retail items was not a permitted continuation of an existing nonconforming use. On August 1, 2022, Appellant appealed from the ZHB Decision to the trial court and, on August 16, 2022, the Borough intervened. On December 20, 2022, without taking new evidence, the trial court affirmed the ZHB Decision. Appellant appealed to this Court.[3]

---

[2] The Zoning Officer visited the Property for a third time on March 29, 2022, and again took photographs confirming that the subject retail items remained on racks or inside coolers and were still available for purchase.

[3] Where, as here, no additional evidence is taken following the determination of a zoning hearing board, this Court's review is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discretion. An abuse of discretion occurs when findings are not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

4

Initially, "[i]t is well[-]settled law in Pennsylvania that a municipality may enact zoning ordinances reasonably restricting [a] property right to protect and promote the public health, safety[,] and welfare under its police power." *Woll v. Monaghan Twp.*, 948 A.2d 933, 938 (Pa. Cmwlth. 2008). "A basic purpose of zoning is to ensure an orderly physical development of the city, borough, township[,] or other community by confining particular uses of property to certain defined areas. With such a purpose nonconforming uses are inconsistent." *Hanna v. Bd. of Adjustment of the Borough of Forest Hills*, 183 A.2d 539, 543 (Pa. 1962) (citation omitted).

> "A lawful nonconforming use is a use predating the enactment of a prohibitory zoning restriction." *DoMiJo, LLC v. McLain*, 41 A.3d 967, 972 (Pa. Cmwlth. 2012). However, "[t]**he right to maintain a pre**[]**existing nonconformity is available only for uses** that were lawful when they came into existence and **which existed when the ordinance took effect**." *Hager v. W*[.] *Rockhill T*[*wp.*] *Zoning Hearing B*[*d.*], 795 A.2d 1104, 1110 (Pa. Cmwlth. 2002). **When a lawful nonconforming use exists**, "the right to continue such use is afforded the constitutional protections of due process." *DoMiJo*, 41 A.3d at 972. Thus, "[a] **municipality is without power to compel a change in the nature of a use where property was not restricted when purchased and is being used for a lawful use**." *Paulson v. Zoning Hearing B*[*d.*] *of Wallace T*[*wp.*], 712 A.2d 785, 788 (Pa. Cmwlth. 1998). "[A] property owner's right to continue operating a legal nonconforming use on its property is an interest that runs with the land, so long as it is not abandoned." *DoMiJo*, 41 A.3d at 972.

*PAJ Ventures, LP v. Zoning Hearing Bd. of Moore Twp.*, 225 A.3d 891, 898 (Pa. Cmwlth. 2020) (emphasis added). "The property owner has the burden to prove the

The zoning hearing board, as fact-finder, determines the credibility of witnesses and the weight afforded to their testimony.

*Tower Access Grp., LLC v. S. Union Twp. Zoning Hearing Bd.*, 192 A.3d 291, 299 n.3 (Pa. Cmwlth. 2018) (citations omitted).

5

existence of a nonconforming use, which requires 'conclusive proof by way of objective evidence of the precise extent, nature, time of creation[,] and continuation of the alleged nonconforming use.'" *Barnabei v. Chadds Ford Twp. Zoning Hearing Bd.*, 118 A.3d 17, 23 (Pa. Cmwlth. 2015) (quoting *Jones v. N. Huntingdon Twp. Zoning Hearing Bd.*, 467 A.2d 1206, 1207 (Pa. Cmwlth. 1983)).  The parties herein do not dispute that the Property's use for the operation of a U-Haul rental business and a Laundromat is a preexisting nonconforming use.

"The right to expand a nonconforming use to provide for the natural expansion and accommodation of increased trade 'is a constitutional right protected by the due process clause.'" *Omatick v. Cecil Twp. Zoning Hearing Bd.*, 286 A.3d 413, 426 n.14 (Pa. Cmwlth. 2022) (quoting *Jenkintown Towing Serv. v. Zoning Hearing Bd. of Upper Moreland Twp.*, 446 A.2d 716, 718 (Pa. Cmwlth. 1982)).

> Our Supreme Court articulated the doctrine of natural expansion nearly a century ago, and Pennsylvania courts consistently have applied the doctrine ever since.  The inquiry, however, is sometimes framed in terms of "continuation" of a nonconforming use, which nonetheless necessitates consideration of the doctrine of natural expansion.  *See Limley* [*v. Zoning Hearing Bd. of Port View*], 625 A.2d [54,] 56 [(Pa. 1993)] ("In determining what is a proper continuation of a nonconforming use, to wit, whether a proposed use bears adequate similarity to an existing nonconforming use, the doctrine of natural expansion must be given effect.").  "The rationale behind the doctrine can be traced to the due process requirements protecting private property.  If a person owns property which constitutes a valid non[]conforming use, it is inequitable to prevent him from expanding the property as the dictates of business or modernization require." *Silver* [*v. Zoning Bd. of Adjustment*], 255 A.2d [506,] 507 [(Pa. 1969)] (footnote omitted).  Although the doctrine earlier had been characterized with constitutional overtones, it was in *Silver* that our Supreme Court clarified that "the right of natural expansion is a constitutional right protected by the due process clause." *Id.*

*Dipal Corp. v. Chartiers Twp. Zoning Hearing Bd.*, 261 A.3d 1097, 1105-06 (Pa. Cmwlth. 2021) (footnote omitted).

> While the right to continue a legal nonconforming use is entitled to constitutional protection, the right to natural expansion is not unlimited, and municipalities may impose reasonable restrictions on expansions of nonconforming uses. *Smalley* [*v. Zoning Hearing Bd. of Middletown Twp.*], 834 A.2d [535,] 544 [(Pa. 2003)]; *Silver* [], . . . 255 A.2d [at] 507 [] (expansion may not be detrimental to public health, welfare, and safety). Thus, "conditions on the land associated with the protected use" may be subject to reasonable regulation. *Baer v. Zoning Hearing B*[*d.*] *of Quincy T*[*wp.*], 782 A.2d 597, 601 (Pa. Cmwlth. 2001); *Cornell Uniforms, Inc. v. Abington T*[*wp.*], . . . 301 A.2d 113 ([Pa. Cmwlth.] 1973) (zoning board has continuing authority to place reasonable restrictions on a nonconforming use).

*Hunterstown Ruritan Club v. Straban Twp. Zoning Hearing Bd.*, 143 A.3d 538, 546 (Pa. Cmwlth. 2016).

> Section 801(A) of the Zoning Ordinance provides:
>
> Within the zoning districts established by this Chapter, there exist uses and lots that were lawful before this Chapter's adoption but which are now prohibited, regulated[,] or restricted under the terms of this Chapter. It is the intent of this Chapter to permit these nonconformities to continue until they are removed, but not to encourage their survival. Such uses are considered incompatible with the permitted uses in the zoning districts involved.

R.R. at 487a. Section 802(B) of the Zoning Ordinance states:

> A nonconforming use may be extended throughout a building that was designed and arranged specifically for the nonconforming use, but the nonconforming use shall not be permitted to occupy land outside the building. If the use of any such nonconforming structure or lot ceases for any reason for a period of more than twelve (12) consecutive months, any subsequent use of the structure or

lot shall conform to the regulations specified by this Chapter for the zoning district involved.

R.R. at 487a.

Appellant first contends that the ZHB abused its discretion or erred as a matter of law by failing to apply the modified variance criteria applicable to requests for natural expansion of a lawful nonconforming use. Specifically, Appellant argues:

> It is uncontested that two lawful nonconforming uses exist on the Property, and that they **both** allow a retail component. *See* [ZHB] Decision, Ex[.] "B" at 10 and 12 ("[Appellant] has satisfied its initial burden of proving the existence of a nonconforming use[] . . ." and "[t]he [ZHB] agrees that the definitions of these two business activities in the Borough's Zoning Ordinance contemplates some incidental retail sales component[.]"). [Appellant] specifically argued in its [a]ppeal that its use and sale of the [d]isputed [i]tems constituted a natural expansion of this preexisting retail component. Consequently, the ZHB was required to determine whether the changes made by [Appellant] constituted a natural expansion, as opposed to a continuation of, the lawful nonconforming uses on the Property.

Appellant Br. at 18-19 (citation omitted). Appellant further asserts:

> **The [] Zoning Ordinance does not lay out a procedure for a property owner to obtain approval for the expansion of a nonconforming use**. However, Section 1002(C)(1)(c) [of the Zoning Ordinance] authorizes the [ZHB] to approve the expansion, extension, or enlargement of nonconforming uses "as provided for in the Zoning Ordinance." As this Court has articulated, **where a [z]oning [o]rdinance does not set forth a procedure to approval** [sic] **natural expansion of a nonconforming use**, **the property owner must "meet the ordinary requirements for the grant of a variance;"** however, some of the traditional variance requirements are more easily satisfied when the existing use is non[]conforming. *Arter v. Phila*[.] *Zoning Bd. of Adjustment*, 916 A.2d 1222, (Pa. Cmwlth. 2007) [(]quoting *Jenkintown . . .*, 446 A.2d [at] 720 . . . [).]

8

Appellant Br. at 19 (emphasis added). In support of its position, Appellant cites *Arter* and *Domeisen v. Zoning Hearing Board of O'Hara Township*, 814 A.2d 851 (Pa. Cmwlth. 2003).

Unlike in the instant matter, applicants in both *Arter* and *Domeisen* sought variances. In *Arter*, a cemetery - a preexisting nonconforming use in the subject zoning district - filed a zoning and use registration application to obtain approval to develop a funeral home and crematory, which the City of Philadelphia (City) Department of Licenses and Inspections refused. On appeal to the City's Zoning Board of Adjustment (ZBA), the applicant argued that the proposed uses were permitted accessory uses to an existing cemetery; the proposed construction would replace deteriorated structures and was lawful; and, in the alternative, the applicant was entitled to a use variance. Although the ZBA concluded that the funeral home and crematory were not permitted as accessory uses as of right, it determined that the applicant had satisfied the City's variance criteria. The neighborhood residents appealed to the trial court, which affirmed the ZBA's decision. Thereafter, the neighborhood residents appealed to this Court. This Court reversed, agreeing with the neighborhood residents that the applicant had failed to present sufficient evidence of unique physical conditions or prohibitive expense to establish unnecessary hardship. Further, this Court restated the rule that where an applicant seeks a variance, the natural expansion doctrine does not dispose of the need to conduct a variance inquiry.[4] Rather, this Court explained:

---

[4] **Nothing** in *Silver* **indicates that a party <u>seeking a variance</u> for an expansion of a nonconforming residential structure need not meet the ordinary requirements for the grant of a variance**; such an applicant must still establish that refusal to grant such a variance would cause an unnecessary hardship peculiar to that property and that grant of the variance would not be contrary to the health, safety and general welfare.

Although the Pennsylvania Supreme Court has indicated that, to be approved, expansion of a non[]conforming use must "meet the *ordinary requirements* for the grant of a variance," *Jenkintown* . . . 446 A.2d [at] 720 . . . (quoting *Walter v. Zoning B[d.] of Adjustment (Phila[.])*, . . . 263 A.2d 123, 126 ([Pa.] 1970)), *some* of those requirements are more easily satisfied when the existing use is non[]conforming.

*Arter*, 916 A.2d at 1229-30 (footnote omitted).  As the *Jenkintown* Court noted:

[T]he [Pennsylvania] Supreme Court and this [C]ourt have steadily indicated that *the rights of a nonconforming use are not such as to give it any greater standing than a conforming use in the same district*; either one will be allowed to go beyond ordinance dimensional limitations only if a variance is obtained.

*Jenkintown*, 446 A.2d at 719.

In *Domeisen*, the municipality granted the applicant, a nonconforming landscaping business, a special exception and 6 related variances pertaining to a 129% floor area increase and a 2.4% building coverage increase.  Neighboring landowners challenged the variances, arguing that the applicant did not prove an unnecessary hardship or unique circumstances of the subject property.  The *Domeisen* Court discussed how variance standards are to be applied to nonconforming uses.  Unlike *Arter* and *Domeisen*, the instant ZHB appeal did not involve a variance application, and, thus, the variance standards discussed therein are inapposite.  Accordingly, the ZHB did not abuse its discretion or err as a matter of law by not applying modified variance criteria here.

Appellant next argues that the ZHB abused its discretion or erred as a matter of law by concluding that Appellant's expansion of the preexisting retail

---

*Walter v. Zoning Bd. of Adjustment (Phila.)*, 263 A.2d 123, 126 (Pa. 1970) (bold and underline emphasis added).

component on the Property did not constitute a natural expansion of the lawful nonconforming U-Haul/Laundromat uses.

This Court has explained:

> The doctrine of natural expansion may be invoked "to maintain economic viability or to take advantage of increases in trade." *Nettleton* [*v. Zoning Bd. of Adjustment*], 828 A.2d [1033,] 1037 n.3 [(Pa. 2003)]. It further may allow for an increase in the "magnitude" or "intensity" of a nonconforming use. *Limley*, 625 A.2d at 57 ("The doctrine of natural expansion would . . . support increased intensity in the property's utilization."); *Humphreys v. Stuart Realty Corp*[.], . . . 73 A.2d 407, 409 ([Pa.] 1950) ("[A] nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade . . . ."). The doctrine permits even a "change in instrumentality" of a nonconforming use. [*Chartiers v.*] *William H. Martin*, 542 A.2d [985,] 988 [(Pa. 1988)]; *see also Firth v. Scherzberg*, . . . 77 A.2d 443, 446 ([Pa.] 1951) ("Neither the natural growth of a business, existing at the time of the enactment of a zoning ordinance, nor adoption thereafter of more modern instrumentalities, suitable and helpful in carrying on the business, works a change of use in legal contemplation."). Our Supreme Court has applied the doctrine, for example, to allow a private club to expand into a public restaurant and bar, *Limley*, 625 A.2d at 56-57, to allow a take[-]out sandwich shop to expand into a full-service pizza restaurant, *Pappas* [*v. Zoning Bd. of Adjustment*], 589 A.2d [675,] 677-78 [(Pa. 1991)], to allow a landfill to increase its daily intake of waste, *William H. Martin*, 542 A.2d at 988-90, and to invalidate a zoning provision prohibiting any increase in the number of dwelling units in an apartment building, *Silver*, 255 A.2d at 507-08.

*Dipal*, 261 A.3d at 1106.

"[O]ur Supreme Court has held that the proposed use need not be identical to the current use. Rather, the proposed use must be sufficiently similar to the non[]conforming use as to not constitute a new or a different use." *Arter*, 916

A.2d at 1230 (citation omitted). "Naturally, not all uses fall within the doctrine, and not all restrictions upon nonconforming uses are forbidden." *Dipal*, 261 A.3d at 1106.

> In *Limley*, the [Pennsylvania] Supreme Court held that a proposed public restaurant and bar was a natural expansion of the existing nonconforming use as a nonprofit private social club. The [*Limley*] Court determined that the chief activity of the social club was the sale of food and beverages and that activity would remain the same with the proposed restaurant. It also found that the proposed establishment would serve the same type of patron base. *See also Pappas* . . . (expansion of a pizza restaurant with seating for 40 customers was similar to existing use as a sandwich shop with limited customer seating and selling mainly take-out food).[5]
>
> This Court looked to the use of the property in *Austin* [*v. Zoning Hearing Board of Forks Township*, 496 A.2d 1367 (Pa. Cmwlth. 1985),] to conclude that a proposed expansion of a farm stand into a delicatessen constituted a new and different use. In that case, the property owners operated a farm stand to sell products grown on their own property and products made from products grown on their property, such as apple cider. They filed an application with a local zoning board to expand their lawful nonconforming use to include the sale of delicatessen items of cold cuts, specialty cheeses, baked goods and wine. Th[is] Court stated that the property owners' proposal "to conduct an establishment quite different from their roadside stand where only farm products grown on the property or produced from those grown on the property" constituted a new and different use. *Austin*, 496 A.2d at 1370. Accordingly, [this Court] held that the

---

[5] *See also Appeal of Indianhead, Inc.*, 198 A.2d 522 (Pa. 1964) (proposed day camp and swim club were sufficiently similar to existing amusement park use); *Mutimer Co. v. Wagner*, 103 A.2d 417 (Pa. 1954) (proposed machinery sales office use was similar to existing real estate and insurance sales office use); *Lench v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 852 A.2d 442 (Pa. Cmwlth. 2004) (proposed conversion of club into restaurant constituted natural expansion of nonconforming use); *Foreman v. Union Twp. Zoning Hearing Bd.*, 787 A.2d 1099, 1101 (Pa. Cmwlth. 2001) (bar/restaurant's increased frequency of adult entertainment from "casual, infrequent[,] and sporadic" to three nights per week was not new or different use).

proposed use was not protected under the doctrine of the natural expansion of an existing nonconforming use.

*Domeisen*, 814 A.2d at 856. Thus, this Court must determine whether the ZHB correctly concluded that Appellant's display and sale of the subject retail items constitutes a new and different use from the preexisting U-Haul/Laundromat operation.

At the March 29, 2022 ZHB hearing, the Zoning Officer described his December 20, 2021 visit to the Property:

Basically[,] I got a call to go down [to the Property], and when I did walk in, I was shocked to see all the products that were up for sale in there. And being -- it was more than just a couple items [sic]. And I would have been okay with the coin-operated machines, but it went way beyond that.

R.R. at 144a. He further stated: "I told [the operators] they would have to stop selling their products and, you know, continue on as a U-Haul[/L]aundromat." R.R. at 146a. The Zoning Officer presented nine photographs he took that day, which the ZHB addressed as follows:

These nine (9) photographs, which were admitted into evidence as Borough Exhibit No. 1, show the following: [C]oolers with a large assortment of soft drinks and several shelves and racks displaying various snack food items and other products for sale. These items and products included things such as cigarettes, vape products, B[IC] lighters, potato chips, "Slim Jims," pumpkin seeds, assorted candy bars, Lifesavers, gummies, Ho-Ho[]s, Twinkies, [and] Pop-Tarts. The [photographs] also show coffee machines and an [ATM].

ZHB Dec. at 5. The Zoning Officer also testified regarding his January 11, 2022 and March 29, 2022 visits to the Property and he presented photographs depicting the Property's condition and showing that the subject retail items remained on

13

display. The Zoning Officer declared that the Zoning Ordinance does not permit a convenience store or a retail store in a residential district.[6]

Dharmishtha Lodaliya (Lodaliya), Appellant's principal and manager of Appellant's business, testified that she viewed the Property before Appellant's purchase and saw various items being offered for sale on the Property, including boxes for packaging supplies, ice cream, sodas, and coffee. She explained that, although Appellant has performed maintenance, it has not structurally changed the Property since its purchase. Lodaliya acknowledged that Appellant began selling additional quantities of retail food, beverages, and other items on the Property because Appellant was not making enough money from its U-Haul/Laundromat businesses. She described that the U-Haul/Laundromat revenues alone were insufficient to maintain Appellant's business.

Lodaliya stated that Appellant added two new large stand-up coolers, shelving, racks, and a peg board to display the subject retail items. She recalled that Appellant also added a microwave, another coffee machine, and the ATM. She further related that Appellant expanded the subject retail items for sale on the Property, including different kinds of soda pop, milk, BIC lighters, vape products, candy bars, crackers, prepackaged baked goods, and cigarettes. Lodaliya explained: "So most of the customers come to do the laundry and the rental U-Haul [sic], and some of them come to buy, like, snacks and everything. And a few customers come -- while they are waiting for the laundry, they buy the snacks and coffee." R.R. at 199a. She further informed the ZHB:

---

[6] The Zoning Ordinance defines "Convenience Store Without Alcohol" as "a retail store with a gross floor area of 5,000 square feet or less, offering a limited selection of grocery, household, non-alcoholic[,] and personal items for quick purchase, but not including the dispensing of fuel/energy recharge." R.R. at 370a. The Zoning Ordinance defines "Retail Store" as "any establishment not otherwise specifically defined that sells or rents commodities and/or services on the premises directly to the general public, available for immediate purchase and removal, but not including the manufacturing or processing of any products." R.R. at 387a.

14

I bought this property when there was already a retail use and I bought it to continue the use of the [P]roperty as it was. And financially I have to find a way to make more money, so I come [sic] up with some of the retails on the [P]roperty.

And I have done everything I can to keep the business afloat, but I need to sell some additional items to keep [sic] open. And there's no change out of the organization of the physical [P]roperty. And I have not plan[ned] to change the overall use.

So[,] I think that what I am doing on the [P]roperty is allowed under this uses [sic], and same when I bought them and where. So[,] I think any small changes I made are nothing more than is a natural expansion of this permitted use.

R.R. at 203a-204a.

Anitra Miller (Miller) also testified on Appellant's behalf. Miller stated that she has lived down the street from and has visited the Property over the 11 years she has lived there. Miller stated: "I do laundry. I've done a U-Haul, and I actually moved on the street. I purchased, like, the drinks and the chips on the [Property]." R.R. at 237a. She expounded: "There was -- the ice creams has [sic] been there the whole time I'll [sic] live there. There was a cooler with soft drinks in it. There were chips and candy bars on the counter. [The prior owner] actually charged, I believe it was, 25 cents for coffee for customers." R.R. at 238a.

Miller opined:

[Appellant is] not doing anything wrong by adding more retail to [its] business. [Appellant is] actually supplying the residents. There's [sic] elderly there **that can't get to the grocery store now that they closed Giant Eagle down the road**.

So[,] [Appellant is] **in walking distance to** . . . **get stuff because** [**it has**] **added milk, bread, stuff that the residents can get to**. **Because there is a lack of a**

15

**grocery store** because the grocery store is a fair distance away.

R.R. at 238a-239a (emphasis added).

Section 102 of the Zoning Ordinance defines "Coin Operated Laundry and Cleaning" as:

> [A] self-serve laundry facility where washing and drying machines are provided for use of customers. The washing machines must use a water (rather than solvent)[-]based cleaning system. The facility may or may not provide staff to assist customers or **provide related retail products for sale**. The facility may or may not provide laundering services for drop-off or delivery. This use does not include "dry cleaning processing."

R.R. at 369a (emphasis added). Thus, the chief activity of a coin-operated laundry business is to provide access to coin-operated laundry machines and **related products** for customers' use.

The Zoning Ordinance defines "Motor Vehicle Rental, Sales and Service" as "a business establishment for the rental, sales[,] and service of automobiles, motorcycles[,] and trucks and any heavy equipment or any other vehicle or equipment which is not classified as a 'motor vehicle' under the Pennsylvania [] Vehicle Code[, 75 Pa.C.S. §§ 101-9805]." R.R. at 381a. Thus, the chief activity of a U-Haul rental business is to rent vehicles and provide supplies related to the vehicles' use.

The ZHB acknowledged in the ZHB Decision that the Zoning Ordinance contemplates some retail sales incident to the operation of such business activities, observing:

> [I]t would be reasonable to expect that someone would be able to purchase a small packet of detergent or a can of pop or a candy bar from a vending machine while washing or drying clothes in a laundromat.

16

[] Similarly, it would be reasonable to expect that someone would be able to purchase moving supplies like tape or boxes or even items like a can of pop, a cup of coffee[,] or an ice cream bar while that person was in the process of renting a van, truck[,] or trailer to move personal property.

[] But the recognition of this retail component of these two business activities cannot reasonably mean that someone has a license to exploit this incidental retail aspect to such an extent that the incidental aspect becomes a new co-equal use, if not the predominant, use of a property. The evidence demonstrates that [Appellant] has done such in this case by adding so many retail food, beverages[,] and other items and equipment related to the sale of these items that the Property's use has changed and has become the site of a convenience store.

ZHB Dec. at 12-13. This Court agrees.

The sheer volume of the subject retail items Appellant offers for sale, as evidenced in the Zoning Officer's photographs and described in Lodaliya and Miller's testimony, reflects a change in the Property's use far beyond a nonconforming U-Haul/Laundromat use and retail items sold **incident** to those operations. Therefore, the ZHB did not abuse its discretion or err as a matter of law by concluding that Appellant's expansion of the preexisting retail use at the Property was not a natural expansion of the lawful nonconforming U-Haul/Laundromat operation.

Finally, Appellant raises several objections in support of its claim that the ZHB erred by ordering Appellant to cease the sale of the subject retail items and remove related display counters, shelf racks, cabinets, coolers, exterior garbage cans, and refrigerated cabinets.

Citing *Silver*, Appellant acknowledges a municipality's authority to impose reasonable restrictions, but contends that the ZHB Decision contains no explanation of how the Zoning Officer's Determination requiring removal of the subject retail items was reasonable or how the sale of such items was "detrimental

17

to the public health, welfare[,] and safety." *Silver*, 255 A.2d at 507. The *Silver* Court recognized that "a lawful non[]conforming use . . . may validly be **expanded** by a **reasonable** accessory use which is not detrimental to the public health, welfare[,] and safety." *Id*. (emphasis added) (quoting *Gross v. Zoning Bd. of Adjustment*, 227 A.2d 824, 826 (Pa. 1967)). However, this holding does not contemplate, as in this instance, a use entirely different from the chief activities of the nonconforming business. Thus, Appellant's argument fails.

Appellant further argues that because *some* incidental retail is permitted under the nonconforming businesses' Zoning Ordinance definitions and *some* retail sales had occurred at the Property before 2013,[7] the ZHB erroneously upheld the Zoning Officer's Determination that Appellant stop selling many of the subject retail items and remove the outside garbage cans and refrigerated cabinets from view. *See* R.R. at 4a. Appellant questions: "How can the admittedly permitted retail component operate on the Property if [Appellant] cannot have **any** 'display counters, shelf racks, cabinets, coolers[,] and orange crates . . . [as well as exterior] garbage cans and refrigerated cabinet[s][?'"] Appellant Br. at 31 (quoting R.R. at 4a). Importantly, the Zoning Officer's Determination acknowledged the permissible reasonable retail component when it notified Appellant: "You would be allowed one coin-operated soda pop machine, a coin-operated soap machine, and one coin-operated snack machine for the convenience of the patrons that are using the laundry machines." R.R. at 4a. Accordingly, Appellant's argument is without merit.

Appellant also claims that the Borough's actions are an impermissible attempt to control the *type* of merchandise Appellant sells at the Property, asserting

---

[7] Other than Miller's imprecise testimony describing the availability of ice cream, soft drinks in a cooler, and chips and candy bars on the counter, there is little record evidence regarding the type or extent of retail sales occurring at the Property before 2013. Appellant has not met its burden to demonstrate that the retail sales were a prior existing nonconforming use. *See Barnabei*.

18

that "zoning ordinances, and those who enforce them, may only regulate where a use occurs and never how it occurs." Appellant Br. at 34.

The law is well established:

> [A]lthough Section 601 of the [Pennsylvania Municipalities Planning Code[8] (]MPC[)], 53 P.S. § 10601, expressly authorizes municipalities to enact zoning ordinances designating what *land uses* are permitted in what districts for purposes of planned community development (*i.e.*, the *where*), **the MPC does not authorize those municipalities to dictate specific business operations** (*i.e.*, the *how*) under the guise of zoning regulation. *See* [*In re*] *Thompson*, 896 A.2d [659,] 670 [(Pa. Cmwlth. 2006)] ("Special exception . . . proceedings involve only the proposed use of the land, and do not involve the particular details of the design of the proposed development."); *see also Van Sciver v. Zoning Bd. of Adjustment of Phila.*, . . . 152 A.2d 717, 724 ([Pa.] 1959) (Variance conditions, *inter alia*, limiting a self-serve laundromat's unmanned nature and operating hours in the interest of crime prevention nevertheless constituted unreasonable "intermeddling with the applicant's ownership of his property."); *Appeal of Sawdey*, . . . 85 A.2d 28, 32 ([Pa.] 1951) (An ordinance (or condition) that "permitted a butcher shop . . . in an area but prohibited its sale of pork, or a drugstore but prohibited its sale of candy, or a grocery store but prohibited its sale of bread, would surely be regarded a[s] unreasonable legislation on details of a business . . . ."); . . . *Land Acquisition, Servs., Inc. v. Clarion C[n]ty. Bd. of Comm'rs*, . . . 605 A.2d 465 ([Pa. Cmwlth.] 1992) (Where an ordinance's primary objective is to regulate and control the operational aspects of a business, the ordinance is not a zoning ordinance.); *Schatz v. New Britain Twp. Zoning Hearing Bd. of Adjustment*, . . . 596 A.2d 294, 298 ([Pa. Cmwlth.] 1991) ("Zoning only regulates the *use* of land and not the particulars of development and construction."); *Kulak v. Zoning Hearing Bd. of Bristol Twp.*, . . . 563 A.2d 978, 980 ([Pa. Cmwlth.] 1989) ("[A] [zoning hearing] board may

_____

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 - 11202.

19

not attach a condition to a special exception which essentially serves a non-zoning purpose[.]").

*MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 184 A.3d 1048, 1060-61 (Pa. Cmwlth. 2018).

Contrary to Appellant's characterization, the Zoning Officer's Determination does not attempt to dictate Appellant's U-Haul/Laundromat businesses. Rather, it concludes that, based on the magnitude and variety of retail sales at the Property, Appellant is operating a different, prohibited business - a business that far exceeds the reasonable parameters of the permitted nonconforming uses. Appellant contends that the Zoning Officer's Determination is an "explicit attempt to regulate the sale of cigarettes and vapes [which] is preempted by state law." Appellant Br. at 35. However, the Zoning Officer's Determination does not dictate Appellant's U-Haul/Laundromat businesses by prohibiting the sale of cigarettes or vape products, but rather concludes that Appellant is operating a prohibited business at the Property. Accordingly, Appellant's arguments lack merit.

Finally, Appellant asserts that the Zoning Officer's Determination restricts its retail operations beyond the Zoning Ordinance's express provisions. Specifically, Appellant claims:

> The Zoning Ordinance allows the sale of "related retail products." Zoning Ordinance § 102. The [Zoning Officer's Determination] orders removal of a variety of items, in addition to all fixtures related to retail sales, from the Property without any consideration as to whether or not they are "related[]" to the [l]aundry [u]se.

Appellant Br. at 32.

This Court has explained:

> It is a principle entrenched in the law that "zoning ordinances are to be liberally construed to allow the broadest possible use of land," *Ligo v. Slippery Rock Township*, 936 A.2d 1236, 1238 (Pa. Cmwlth. 2007), or,

20

in other words, "to give the landowner the benefit of the least restrictive use." *Riverfront Dev[.] Gr[p.], LLC v. City of Harrisburg Zoning Hearing B[d.]*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015). "[W]e must remember that '[t]he permissive widest use of the land is the rule and not the exception, unless specifically restrained in a valid and reasonable exercise of the police power.'" *Neshannock T[wp.] v. Musguire*, . . . 484 A.2d 839, 840 ([Pa. Cmwlth.] 1984) (quoting *Fidler v. Zoning B[d.] of Adjustment*, . . . 182 A.2d 692, 695 . . . ([Pa.] 1962)). Indeed, "[t]his Court has held that it is an abuse of discretion for a zoning hearing board to narrow the terms of an ordinance and further restrict the use of a property." *Reihner v. City of Scranton Zoning Hearing B[d.]*, 176 A.3d 396, 400 (Pa. Cmwlth. 2017).

In reviewing the plain language of the text of an ordinance, *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015), we are "guided to construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning." *Adams Outdoor Advert[.], LP v. Zoning Hearing B[d.] of Smithfield T[wp.]*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). In interpreting a zoning ordinance, we apply the rules of statutory construction. The primary mission of statutory interpretation is to determine legislative intent. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1921. The plain language of a statute generally provides the best indication of legislative intent, and therefore, statutory construction begins with analyzing the text itself. To ascertain and provide a natural construction of language and phrases, we may consult dictionaries and can draw upon common sense and basic human experience.

We recognize that "[a board's] interpretation of its own zoning ordinance is entitled to great deference and weight." *Hafner v. Zoning Hearing B[d.] of Allen T[wp.]*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009). As a general matter, the courts afford the interpretation proffered by a zoning hearing board and/or a zoning officer some degree of deference. However, if that interpretation is inconsistent with the plain language of the ordinance or the meaning of the ordinance is unambiguous, the

21

> "interpretation carries little or no weight." *Malt* [*Bevs. Distribs. Ass'n v. Pa. Liquor Control Bd.*], 918 A.2d [171,] 176 [(Pa. Cmwlth. 2007)]. This is because "a zoning board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance." *Greth Dev*[.] *Gr*[*p.*]*, Inc. v. Zoning Hearing B*[*d.*] *of Lower Heidelberg T*[*wp.*], 918 A.2d 181, 187 (Pa. Cmwlth. 2006).

*Sabatini v. Zoning Hearing Bd. of Fayette Cnty.*, 230 A.3d 514, 520-21 (Pa. Cmwlth. 2020) (citations and footnote omitted).

Merriam-Webster defines "related" as "connected by reason of an established or discoverable **relation**[.]" "Related." *Merriam-Webster.com Dictionary*, Merriam-Webster[9] (emphasis added). It defines "relation" as "**an aspect or quality** (such as resemblance) **that connects two or more things** or parts as being or **belonging** or working **together** or as being **of the same kind**[.]" "Relation." *Id.*[10] (emphasis added).

Here, the Zoning Ordinance permits a laundromat to "provide related retail products for sale[,]" R.R. at 369a, and the Zoning Officer's Determination permitted Appellant **only** "one coin-operated soda pop machine, a coin-operated soap machine, and one coin-operated snack machine for the convenience of the patrons that are using the laundry machines." R.R. at 258a. Because the ZHB did not address the extent to which the Zoning Officer's determination is consistent with the text, "related retail products," in Section 102 of the Zoning Ordinance's definition of "Coin Operated Laundry and Cleaning[,]" this Court does not opine on whether that determination is more or less restrictive than the Zoning Ordinance requires, and must remand for the ZHB to consider that question in the first instance.

---

[9] https://www.merriam-webster.com/dictionary/related (last visited Mar. 5, 2024).
[10] https://www.merriam-webster.com/dictionary/relation (last visited Mar. 5, 2024).

For all of the above reasons, the trial court's order is vacated and the matter is remanded to the trial court with direction that it remand to the ZHB to determine the meaning of the term "related retail products" in Section 102 of the Zoning Ordinance's definition of "Coin Operated Laundry and Cleaning."

_____
ANNE E. COVEY, Judge

23

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shyam Ventures, LLC, : 
                         Appellant : 
                                      : 
                  v. : 
                                        : 
Zoning Hearing Board of the : 
Borough of Castle Shannon and :   No. 56 C.D. 2023
Borough of Castle Shannon : 

## O R D E R

AND NOW, this 7th day of March, 2024, the Allegheny County Common Pleas Court's (trial court) December 20, 2022 order is VACATED and this matter is remanded to the trial court with direction that it REMAND to the Zoning Hearing Board of the Borough of Castle Shannon for further proceedings consistent with this Opinion.

Jurisdiction is relinquished.

 

_____
ANNE E. COVEY, Judge